MARQUARDT AND ROCHE/MEDITZ AND HACKETT,
INC. *v.* RIVERBEND EXECUTIVE CENTER, INC.
(AC 21928)

Mihalakos, Flynn and Hennessy, Js.

Argued September 11, 2002—officially released January 7, 2003

*Scott M. Harrington,* for the appellant (defendant Summer Street Properties, LLC).

*Robert J. Sickinger,* for the appellee (plaintiff).

*Opinion*

FLYNN, J. The defendant Summer Street Properties, LLC, appeals from the judgment of the trial court granting the plaintiff, Marquardt & Roche and Partners, Inc., injunctive relief and attorney's fees.[1] This matter concerns a dispute between the parties as to the interpretation of lease provisions concerning parking insofar as they affect three particular parking spaces. The claims that the defendant raises are (1) whether the plaintiff was entitled under the lease to the exclusive use of the parking area, (2) whether the evidence supported a finding of irreparable harm necessary for injunctive relief, (3) whether the court improperly excluded the defendant's evidence of available parking spaces, (4) whether the court improperly excluded, as expert opinion, a certain out-of-court statement, (5) whether the court improperly excluded, as an offer of compromise, a letter from the plaintiff's counsel to the defendant's counsel and (6) whether the court abused its discretion in the amount of attorney's fees awarded to the plaintiff. We affirm in part and reverse in part the judgment of the trial court.

We note that some of the events which are pertinent to this appeal occurred before the lease, which is the focus of this case, was assigned to the defendant by the former lessor, Riverbend Executive Center, Inc. (Riverbend). The trial court could reasonably have found the following facts.

On December 11, 1996, the plaintiff leased office and parking space from Riverbend in a building located at

---

[1] The plaintiff represents that "Marquardt & Roche and Partners, Inc." is its present name, although when this case began the plaintiff was known as "Marquardt & Roche/Meditz & Hackett, Inc."

Riverbend Executive Center, Inc., is no longer a defendant in this case. Prior to trial, Summer Street Properties, LLC, was joined as a defendant, and the action was withdrawn as against Riverbend Executive Center, Inc. We refer in this opinion to Summer Street Properties, LLC, as the defendant.

999 Summer Street in Stamford. One of the reasons that the plaintiff chose this particular building was the availability of parking for its employees and clients.

In negotiations prior to the execution of the lease, the plaintiff's representatives drafted a paragraph regarding the plaintiff's rights to parking and a map of the parking area as an attachment to the lease. Riverbend agreed to these changes and the paragraph numbered 1 (z) and the map designated exhibit B were incorporated into the signed lease. Paragraph 1 (z) states in part: "Parking: A designated area as shown on Exhibit B on Parking Level C, the closed area inside the control point is to be for the exclusive use of [the plaintiff]. Nine (9) additional designated parking spaces outside of the control point (as shown on Exhibit B Parking Plan as spaces 27-35) will also be provided to [the plaintiff]. [The plaintiff] acknowledges that Landlord has provided enough space to park at least Thirty-Four (34) cars in total. Landlord will provide metal signage on the walls to clearly indicate that the above mentioned parking is for the exclusive use of [the plaintiff]. [The plaintiff] may, at its option and cost, install a mechanical gate to restrict others from the closed area inside the control point. [The plaintiff] may at its option and cost, install a rope/chain or similar device to restrict use of the nine (9) additional designated parking spaces outside the control point. . . ."

After the lease signing, but prior to its February 14, 1997 commencement date, the plaintiff requested and Riverbend agreed to paint three curbside spaces marked "Reserved" in the closed area within the control point (control area). These three spaces became the focus of this dispute. The map of the parking area was drawn to reflect the condition of the parking area at the time of the execution of the lease and, so, does not show the location of the three curbside spaces. The three curbside spaces are within the control area, and

are also adjacent to the office used by the landlord's maintenance personnel. In August, 1997, Riverbend installed signs for the plaintiff that read, "Reserved M&R/M&H," on the wall beside those three spaces. The plaintiff noticed unauthorized vehicles parking in the three curbside spaces shortly after the spaces were created.

In December, 1998, Riverbend assigned its interest in the lease to the defendant. After the assignment, Riverbend continued to act as the property manager on the defendant's behalf. After several complaints to the defendant's agents regarding unauthorized vehicles parking in the three curbside spaces, the defendant gave the plaintiff permission to tow unauthorized vehicles parked in those spaces. The towing, however, caused other tenants of the defendant and their customers to become upset.

In March, 2000, without any notice to the plaintiff, the defendant replaced the signs on the wall beside the curbside spaces that formerly read, "Reserved M&R/M&H," with signs that read, "Property Maintenance Service Vehicles Only." The plaintiff repeatedly requested that the defendant return the curbside spaces to their former condition, but the defendant consistently refused. Subsequently, the plaintiff's employees and clients no longer parked in the curbside spaces, but the defendant's employees did park there occasionally.

In August, 2000, the defendant resurfaced the parking area, thus removing the word "Reserved" that had been painted on the spaces themselves. The defendant then had the surface painted to read, "Property Maintenance Service Vehicles Only," thus echoing the language of the signs on the wall beside the curbside spaces. After the plaintiff contacted the defendant about this latest development, the defendant, in September, 2000, painted "no parking" on the surface of the parking area

where the three curbside spaces had been located. The defendant removed its signs from the adjacent wall a few days later. Despite the spaces being marked "no parking," however, the defendant's employees continued to park in the curbside area.

The plaintiff commenced the present action in September, 2000, when it served Riverbend with the original complaint. Riverbend responded by filing a motion for summary judgment based, in part, on the fact that, since the assignment of its interest to the defendant, Riverbend was no longer a party responsible under the lease. The plaintiff realized its error and filed a motion to cite in and to substitute Summer Street Properties, LLC, as the defendant. Our review of the record indicates that the plaintiff was billed substantial attorney's fees in connection with the action against the wrong defendant, Riverbend, and its motion for summary judgment. At the hearing on Riverbend's motion, the court granted the plaintiff's motion to cite in Summer Street Properties, LLC, and ordered the plaintiff to file an amended complaint. In December, 2000, the plaintiff filed an amended complaint against the defendant, and the matter was withdrawn as to Riverbend.

A trial was held in May, 2001, in which the court found the issues for the plaintiff, enjoined the defendant from interfering with the plaintiff's leasehold, issued an injunction ordering the defendant to paint stripes to mark the three curbside spaces, which would be for the plaintiff's exclusive use, and ordered the defendant to pay the $24,270.31 in attorney's fees and costs requested by the plaintiff.

The defendant raises six separate claims on appeal. The defendant's first claim is simply a question of the extent of the parties' rights under the lease. The parties agree that the lease was not modified after it was executed. The defendant claims that the court's decision

that the lease granted the plaintiff the exclusive use of the three curbside parking spaces was improper. We begin by setting forth our standard of review.

"Although ordinarily the question of contract interpretation, being a question of the parties' intent, is a question of fact . . . [w]here there is definitive contract language, the determination of what the parties intended by their contractual commitments is a question of law. . . . When . . . the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct . . . ." (Citations omitted; internal quotation marks omitted.) *Issler* v. *Issler*, 250 Conn. 226, 235–36, 737 A.2d 383 (1999).

"In construing a written lease, which constitutes a written contract, three elementary principles must be kept constantly in mind: (1) The intention of the parties is controlling and must be gathered from the language of the lease in the light of the circumstances surrounding the parties at the execution of the instrument; (2) the language must be given its ordinary meaning unless a technical or special meaning is clearly intended; (3) the lease must be construed as a whole and in such a manner as to give effect to every provision, if reasonably possible." (Internal quotation marks omitted.) *Peter-Michael, Inc.* v. *Sea Shell Associates*, 244 Conn. 269, 275, 709 A.2d 558 (1998). "A determination of contractual intent ordinarily presents a question of fact for the ultimate fact finder, although where the language is clear and unambiguous, it becomes a question of law for the court." Id., 276.

The parties' dispute centers on the three curbside spaces located within the control area. The language of the lease that relates to parking is clear and unambiguous in this regard: "[T]he closed area inside the control point is to be for the exclusive use of [the plaintiff]."

We agree with the court that this language gives the plaintiff the right to the exclusive use of the control area, which also happens to be the area where the three curbside spaces are located. Despite this clear and unambiguous language, the defendant appropriated the three curbside parking spaces to its own use by marking them, "Property Maintenance Service Vehicles Only," and later, "no parking."

The defendant argues that the lease did not identify the three curbside spaces and that the lease could not grant the curbside spaces because they were not created until after the lease was executed. We do not find this contention persuasive because the lease grants the plaintiff the exclusive use of the entire *area* within the control point and not just the parking spaces that were delineated before the lease was executed.

The defendant calls our attention to paragraph 2 (c) (ii) of the lease, which the defendant claims grants it the right to make changes to the plaintiff's parking area. In considering the defendant's claim, we are mindful of the fact that "the lease must be construed as a whole and in such a manner as to give effect to every provision, if reasonably possible." (Internal quotation marks omitted.) Id., 275. Paragraph 2 (c) of the lease states in part: "Landlord reserves the right from time to time upon reasonable notice to [the plaintiff] (except in emergency situation, in which event no notice will be required) without unreasonable interference with [the plaintiff's] use . . . (ii) To make changes to the Common Areas including, without limitation, changes in the location, size, shape and number of . . . parking spaces . . . (no changes may be made to [the plaintiff's] parking spaces as provided in Exhibit B without [the plaintiff's] consent which consent shall not be unreasonably withheld) . . . ." Despite the defendant's claim, however, this paragraph does not grant it the power to act in the manner it did for several reasons.

We note first that this paragraph requires the defendant to provide reasonable notice to the plaintiff prior to making any changes. We are not directed to anything in the record that indicates that any notice was given to the plaintiff before the repainting of the parking area and removal of the plaintiff's signs. This paragraph does provide an exception to the notice requirement for emergency situations, but the defendant does not point us to any evidence in the record that there was ever such an emergency.

Finally, this paragraph applies solely to "common areas." Paragraph 2 (b) of the lease demonstrates quite clearly that the closed area within the control point does not fall within the term "common areas." Paragraph 2 (b) states that "[the plaintiff] shall have the nonexclusive right to use in common with the Landlord or any other tenants in the Building . . . the following areas ('Common Areas') appurtenant to the Premises . . . ." The defendant fails to explain how the "closed area within the control point is to be for the exclusive use of [the plaintiff]" under paragraph 1 (z) while simultaneously being a common area that the plaintiff has "the nonexclusive right to use in common with the Landlord or any other tenants" under paragraph 2 (b). Such an interpretation of the lease would result in contradictory provisions. We conclude, on the basis of the ordinary meaning of the language of the lease, that the term "common areas" does not include the control area in which the plaintiff has "exclusive use."

We further conclude that the court was correct to conclude that "[t]he provisions of the lease clearly indicate that the [plaintiff] was entitled to the exclusive use of the area sited in exhibit B of the lease."

The defendant's second claim is that the court improperly found that the plaintiff suffered irreparable harm.

We begin our analysis of the defendant's second claim by setting forth our standard of review for this claim. "A party seeking injunctive relief has the burden of alleging and proving irreparable harm and lack of an adequate remedy at law. . . . A prayer for injunctive relief is addressed to the sound discretion of the court and the court's ruling can be reviewed only for the purpose of determining whether the decision was based on an erroneous statement of law or an abuse of discretion. . . . Therefore, unless the trial court has abused its discretion, or failed to exercise its discretion . . . the trial court's decision must stand." (Citations omitted; internal quotation marks omitted.) *Advest, Inc.* v. *Wachtel*, 235 Conn. 559, 562–63, 668 A.2d 367 (1995). "A decision to grant or deny an injunction must be compatible with the equities in the case and 'balance the injury complained of with that which will result from interference by injunction.' *Moore* v. *Serafin*, 163 Conn. 1, 6, 301 A.2d 238 (1972)." *Raph* v. *Vogeler*, 45 Conn. App. 56, 62, 695 A.2d 1066, cert. denied, 241 Conn. 920, 696 A.2d 342 (1997).[2]

"The extraordinary nature of injunctive relief requires that the harm complained of is occurring or will occur if the injunction is not granted. Although an absolute certainty is not required, it must appear that there is a substantial probability that but for the issuance of the

[2] Portions of the plaintiff's requested relief appear to be in the nature of specific performance. For example, the plaintiff sought an injunction preventing the defendant from interfering with the plaintiff's parking rights under the lease. We note that the analysis is the same whether we label the relief a prohibitive injunction or specific performance. "Under the traditional views, specific relief will be denied when . . . the legal remedy is regarded as adequate or the plaintiff is not subjected to irreparable harm by the breach . . . . The specific performance remedy is a form of injunctive decree in which the court orders the defendant to perform the contract. . . . The specific performance decree originated in the old equity courts and continues today to be thought of as an equitable remedy, with the usual attributes of such remedies." 3 D. Dobbs, Law of Remedies (2d Ed. 1993) § 12.8 (1), pp. 190–91.

injunction, the party seeking it will suffer irreparable harm." (Internal quotation marks omitted.) *AvalonBay Communities, Inc.* v. *Orange,* 256 Conn. 557, 566, 775 A.2d 284 (2001).[3]

The defendant claims that "no evidence of any harm, much less actual harm, was presented at trial . . . ." We disagree. The court had before it ample evidence in the form of testimony and photographs from which the court could determine that the defendant removed the plaintiff's signs and repainted the three curbside spaces for the defendant's own use. The defendant took these actions without any notice to the plaintiff and without the plaintiff's consent even though it took such action within the area which the lease designated for the plaintiff's exclusive use. We conclude in light of the record that the court properly found that "[a] leasehold was taken away from the plaintiff and . . . that is sufficient to constitute irreparable harm."

The defendant argues that it proved that the plaintiff always had other parking spaces available to it. The defendant believes that such a showing would preclude a finding of harm in this case. We are not persuaded. The plaintiff is not required to use every inch of its parking area constantly in order to prevent the defendant from entering and taking part of that area for its own use. Such an argument by the defendant could just as easily be used to support a decision by any interloper to take a portion of a tenant's office space if the tenant happened to let a leased room lie idle for too long.

We conclude that the plaintiff carried its burden of proving irreparable harm, and, therefore, that the court

---

[3] The defendant argues that "a finding of irreparable harm is a conclusion of law" without citing any authority for the proposition. "Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly." (Internal quotation marks omitted.) *Szczerkowski* v. *Karmelowicz,* 60 Conn. App. 429, 436, 759 A.2d 1050 (2000). Because the defendant failed to support its argument, we rely solely on the standard of review previously set forth.

did not abuse its discretion in granting the injunctive relief requested.

The defendant's third claim is an evidentiary one, but our decision on this third claim is closely tied to the outcome of the issue of irreparable harm in the second claim. The defendant claims that it was improper for the court to exclude from evidence, on relevancy grounds, the documentary and photographic evidence offered by the defendant concerning the number of vacant parking spaces that were available for use by the plaintiff in its exclusive parking area.

We begin our analysis of the defendant's third claim by setting forth our standard of review when considering the court's evidentiary rulings. "[Our Supreme Court has] held generally that [t]he trial court has broad discretion in ruling on the admissibility [and relevancy] of evidence. . . . The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion." (Internal quotation marks omitted.) *Urich* v. *Fish*, 261 Conn. 575, 580, 803 A.2d 311 (2002).

The defendant argues that photographic and documentary evidence of parking spaces available to the plaintiff was relevant to the issue of irreparable harm. "Relevant evidence is evidence that has a logical tendency to aid the trier in the determination of an issue. *Pitt* v. *Kent*, 149 Conn. 351, 357, 179 A.2d 626 (1962). One fact is relevant to another if in the common course of events the existence of one, alone or with other facts, renders the existence of the other either more certain or more probable. *State* v. *Blake*, 69 Conn. 64, 76, 36 A. 1019 (1897). . . . Evidence is irrelevant or too remote if there is such a want of open and visible connection between the evidentiary and principal facts that, all things considered, the former is not worthy or safe to be admitted in the proof of the latter. *State* v.

*Kelly*, 77 Conn. 266, 269, 58 A. 705 (1904). A party is not required to offer such proof of a fact that it excludes all other hypotheses; it is sufficient if the evidence tends to make the existence or nonexistence of any other fact more probable or less probable than it would be without such evidence. *State* v. *Briggs*, [179 Conn. 328, 332, 426 A.2d 298 (1979), cert. denied, 447 U.S. 912, 100 S. Ct. 3000, 64 L. Ed. 2d 862 (1980)] . . . . Evidence is not rendered inadmissible because it is not conclusive. All that is required is that the evidence *tend* to support a relevant fact even to a slight degree, so long as it is not prejudicial or merely cumulative." (Emphasis in original; internal quotation marks omitted.) *State* v. *Kiser*, 43 Conn. App. 339, 361–62, 683 A.2d 1021, cert. denied, 239 Conn. 945, 686 A.2d 122 (1996), cert. denied, 520 U.S. 1190, 117 S. Ct. 1478, 137 L. Ed. 2d 690 (1997).

We previously concluded that the plaintiff is not required by the lease constantly to be using every inch of its parking area in order to prevent the defendant from entering and taking part of that area for its own use. No number of photographs of empty parking spaces could have prevented a determination by the court that the defendant had interfered with the plaintiff's leasehold, unless those photographs showed that the defendant had not, as the plaintiff's witness testified, taken down the plaintiff's signs, replaced those signs with the defendant's own signs, removed the "reserved" markings from the parking surface, and painted "Property Maintenance Service Vehicles Only" and "no parking" on the parking surface in an area that was for the plaintiff's exclusive use. The documentary and photographic evidence offered by the defendant did not contradict the testimony of the plaintiff's witness on any of those facts. We conclude that the court acted within its discretion by excluding such evidence.

The defendant's fourth claim is, as was its third claim, an evidentiary one. Specifically, the defendant claims

that the court should have allowed the testimony of William Barber, the defendant's parking lot painter. Barber testified that he told one of the defendant's representatives that painting the three curbside spaces to allow for parking was "an unwise decision, because [of] the difficulty of backing out from the perpendicular parking spaces." The plaintiff objected to this statement, and the court sustained that objection on the ground that this was opinion testimony and Barber had not been disclosed as an expert witness. Although we disagree with the court that Barber's testimony amounted to expert opinion testimony, the testimony was not relevant and, therefore, properly was excluded.

The court thought that the defendant wanted to use Barber's statement as substantive evidence to prove that the parking spaces were unsafe.[4] The court reasoned that the question of the difficulty of backing out was one to which only an expert could testify. Expert testimony is required when a disputed matter is "manifestly beyond the ken of the average trier of fact, be it judge or jury." *State* v. *McClary*, 207 Conn. 233, 245, 541 A.2d 96 (1988); see also *Jaffe* v. *State Dept. of Health*, 135 Conn. 339, 349, 64 A.2d 330 (1949) ("[w]here . . . an issue presented is such that its solution can only be reached upon the basis of the special knowledge of expert witnesses, such evidence must be produced").

The court, however, did not consider the fact that the question of difficulty of backing a vehicle is one which our legislature expects all operators of motor vehicles to consider on a regular basis when using public streets. See General Statutes § 14-243 (b) ("[n]o person shall back a vehicle unless such movement can be made with reasonable safety and without interfering

---

[1] In sustaining the plaintiff's objection to Barber's testimony, the court stated that "[e]ssentially what [the defendant] want[s] me to do is to take [Barber's] opinion, and I can only take his opinion if he is an expert."

with other traffic"). Section 14-243 (b) is an indication from the General Assembly that a common sense standard can be employed regarding the safety of backing a vehicle. In this case, the court could have allowed Barber, who was familiar with the parking area, to testify on the issue of the safety of backing. "The court in its sound discretion may admit testimony as to the opinion of a lay witness." *Zering* v. *Zering*, 5 Conn. App. 249, 251, 497 A.2d 1023 (1985). This was not a situation such as in *Doe* v. *Yale University*, 252 Conn. 641, 748 A.2d 834 (2000), where the jury was asked to determine whether a university had breached the applicable standard of care when the plaintiff, a resident physician, contracted the human immunodeficiency virus at Yale-New Haven Hospital. In *Doe*, our Supreme Court determined that, under the facts of that case, the jury was required to consider the expert testimony on the issue of the applicable standard of care, because the standard of care was not something within lay knowledge. See id., 687–89. The present case presented a very simple question which a lay witness, such as Barber, might have answered for the court.

The defendant stated, however, that the testimony was not being offered for its truth, but rather to show what the defendant was told. Absent a claim by the defendant that Barber's statement should have been considered in a determination of whether the parking spaces were unsafe, such testimony does not even fall within the rubric of opinion testimony by an expert. We must yet determine, however, whether Barber's testimony was relevant to an issue before the court.

The defendant argues that Barber's testimony was relevant to the defendant's motive and intent in repainting the three curbside spaces, namely, that the defendant's representatives had learned of concerns as to the safety of the three curbside spaces. The defendant argues that, in deciding whether to grant an injunction,

the court must balance all of the equities as outlined in *Raph* v. *Vogeler*, supra, 45 Conn. App. 62. Although Barber's testimony might have established that the defendant had been made aware of safety concerns regarding the three curbside parking spaces,[5] the defendant's good faith, or lack thereof, should not have been a factor in the court's decision.

The language of the lease is clear when it states that "the closed area inside the control point is to be for the exclusive use of [the plaintiff]." The defendant had no right to repaint the plaintiff's parking area for the defendant's exclusive use or to mark it "no parking." The plaintiff's evidence demonstrated that the defendant's agents continue to use the three curbside spaces despite "no parking" being painted there. The court's injunction required the defendant to return the plaintiff's parking area to the condition it was in prior to the defendant's wrongful acts. "It would be contrary to equity and fairness to allow a defendant to retain a benefit at the expense of the plaintiff." *United Coastal Industries, Inc.* v. *Clearheart Construction Co.*, 71 Conn. App. 506, 513, 802 A.2d 901 (2002). Where the benefit taken by the defendant was the plaintiff's lease rights to park on certain property, the plaintiff had a right to have that property returned to its use, the defendant's motive and intent notwithstanding.

The fifth claim raised by the defendant is also evidentiary in nature. The defendant claims that it was improper for the court to exclude the letter sent from the plaintiff's attorney to the defendant's attorney in April, 2000, because the letter contains a statement of fact that was separate from any offer of compromise. We disagree.

---

[5] When asked by the court why Barber's testimony should be admitted, the defendant's counsel responded: "You wouldn't let my client testify about how he came to his knowledge about a safety concern, and I am trying to get to his knowledge about a safety concern."

We need not examine whether a particular statement of fact contained in the letter should have been admitted into evidence. The defendant, at trial, did not direct the court's attention to the specific language, which the defendant claims should have been admitted. Rather, the defendant attempted to have the entire letter admitted into evidence as a full exhibit. Even on appeal, the defendant still argues that the entire letter should have been admitted in evidence. This letter, however, contains the following statements: "Will your client respect the rights of mine to the 'exclusive use' of this area, including but not limited to these three (3) spaces? Will your client restore the signage in this area? Can we reach an agreement that will avoid the need for a judicial determination of my client's rights?" These statements clearly are inadmissible evidence of settlement negotiations and, as such, the court was correct to exclude them. See *Tomasso Bros., Inc.* v. *October Twenty-Four, Inc.*, 221 Conn. 194, 199, 602 A.2d 1011 (1992).

Although there were statements within that letter that the defendant wanted introduced into evidence, the defendant never sought an introduction of only those portions it claims were admissible; it sought, rather, to introduce the entire letter. Because the inadmissible statements of an offer of compromise were contained in the letter offered in its entirety, the court properly refused to admit that letter into evidence.

The defendant's sixth and final claim pertains to the amount of attorney's fees the court ordered the defendant to pay to the plaintiff. Specifically, the defendant argues that it was improper for the court to award the full amount of attorney's fees requested by the plaintiff when a portion of that amount was attributable to the plaintiff's actions in erroneously filing suit against Riverbend. We agree with the defendant on this issue.

"[A]bsent contractual or statutory authorization, there can be no recovery, either as costs or damages,

for the expenses of litigation or the expenditures for counsel fees by a party from his opponent. . . . Where a contract expressly provides for the recovery of reasonable attorney's fees, an award under such a clause requires an evidentiary showing of reasonableness. . . . A trial court may rely on its own general knowledge of the trial itself to supply evidence in support of an award of attorney's fees. . . . The amount of attorney's fees to be awarded rests in the sound discretion of the trial court and will not be disturbed on appeal unless the trial court has abused its discretion." (Citations omitted; internal quotation marks omitted.) *Buccino* v. *Cable Technology, Inc.*, 25 Conn. App. 676, 679, 595 A.2d 376 (1991). "Sound discretion, by definition, means a discretion that is not exercised arbitrarily or wilfully, but with regard to what is right and equitable under the circumstances and the law . . . ." (Internal quotation marks omitted.) *Krasowski* v. *Fantarella*, 51 Conn. App. 186, 199–200, 720 A.2d 1123 (1998), cert. denied, 247 Conn. 961, 723 A.2d 815 (1999).

Paragraph thirty-two of the lease states that, in an action brought due to a breach of any provision of the lease, "all reasonable costs and expenses, including without limitation, actual professional fees such as appraisers', accountants', and attorneys' fees, incurred by [the] prevailing party shall be paid by the other party . . . ." The defendant argues that the court abused its discretion when it awarded attorney's fees incurred before the defendant was made a party to this action.

The court awarded the plaintiff attorney's fees of $23,488.75, costs of $502.97 and a bill of costs of $318.59. The court was aware of the fact that the plaintiff mistakenly had named Riverbend as a defendant before citing in the defendant Summer Street Properties, LLC. We have reviewed the affidavit in support of the plaintiff's request for attorney's fees. The record discloses that the total amount of legal fees and costs awarded included

several thousand dollars of expenses which arose because the plaintiff sued the wrong party. The lease provision that requires the payment of legal fees to the prevailing party does not reach so broadly as to require the defendant to pay for the plaintiff's mistakes. The court failed to account for the fact that the plaintiff was requesting attorney's fees, some of which would not have been incurred had the plaintiff named Summer Street Properties, LLC, as the defendant from the beginning. By including those fees and any associated costs in its award, the court abused its discretion, and that part of the judgment awarding attorney's fees must be recalculated to eliminate such fees and costs, which are solely the fault of the plaintiff.

The judgment is reversed as to the award of attorney's fees and costs only, and the case is remanded with direction to recalculate said award to eliminate the fees and costs incurred as a result of the plaintiff's mistakenly bringing an action against Riverbend. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.