WILLIAM W. GAGER, JR., ADMINISTRATOR (ESTATE
OF WILLIAM W. GAGER) *v.* GAGER AND
PETERSON, LLP
(AC 22505)

Dranginis, Flynn and Bishop, Js.

Argued December 5, 2002—officially released May 6, 2003

Chester J. Bukowski, Jr., with whom, on the brief, was *Mary Anne A. Charron*, for the appellant (substitute plaintiff).

*James K. Robertson, Jr.*, with whom, on the brief, was *Frank J. Scinto*, for the appellee (defendant).

*Opinion*

DRANGINIS, J. In this action for specific performance of a provision in a retirement agreement, the substitute plaintiff, Sarah Whelan, successor administrator c.t.a., d.b.n., of the estate of William W. Gager, Sr.,[1] appeals from the judgment of the trial court rendered in favor of the defendant, Gager and Peterson, LLP. On appeal, the substitute plaintiff claims that the court improperly (1) determined that the retirement agreement did not provide her with the power to compel the defendant law firm to remove the name "Gager" from its name and (2) balanced the equities in favor of the defendant.[2] We affirm the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of the substitute plaintiff's appeal. In 1997, the original plaintiff, William W. Gager, Jr., administrator c.t.a. of the estate of his father, William W. Gager, Sr. (attorney Gager), filed a complaint against

---

[1] The original plaintiff was William W. Gager, Jr., administrator c.t.a. of the estate of his father, William W. Gager, Sr. Due to the original plaintiff's declining health, however, on January 17, 2001, his daughter, Sarah Whelan, was appointed successor administrator c.t.a., d.b.n., of the estate of William W. Gager, Sr., and, thereafter was substituted as the plaintiff in this matter.

[2] We distill those two claims from the four issues listed in the substitute plaintiff's statement of issues and appellate brief.

the defendant law firm seeking to remove the name "Gager" from the firm's name pursuant to a written agreement entered into between attorney Gager and the firm on January 1, 1967. That agreement, formed to address attorney Gager's desire to retire from the practice of law and to terminate his partnership interests in the law firm, provides in paragraph four that "it is the desire of the continuing partners that the name Gager continue to remain in the partnership name. [Attorney Gager], or his Executor, may, however, upon request have the name Gager dropped from the firm name, but until receipt of such request, the name Gager may continue to be used in the firm name."[3]

On June 27, 1967, attorney Gager died testate. Pursuant to the terms of his will dated March 24, 1964, the Colonial Bank and Trust Company was appointed executor of his estate. In a letter dated April 15, 1996, William W. Gager, Jr., requested that the Bank of Boston Connecticut, as executor by way of succession to the Colonial Bank and Trust Company, commence proceedings to remove the name "Gager" from the firm's name. After considering the request, the Bank of Boston Connecticut refused to commence such proceedings.[4] As a result, William W. Gager, Jr., filed a petition with the Probate Court for the district of Cheshire to open his father's

[3] From the evidence presented at trial, the court found, inter alia: "Since its founding by attorney Gager, in 1917, the firm has undergone several name changes, the most recent one being the change of name from Gager and Henry to the name Gager and Peterson. The name Gager, however, has always been first in the firm's name."

[4] In a letter addressed to the original plaintiff dated May 30, 1996, the Bank of Boston Connecticut explained the reasons for its refusal, stating, among other things, that "[t]o the best of [its] knowledge, there has been no allegation and/or indication that [the defendant] firm and/or its members have discredited the Gager name, nor done anything to embarrass the Gager name or family. Since it has been almost thirty years from the signing of the [retirement] agreement, and there is no substantial and/or business reason for a change, the Bank is not willing to pursue this matter on your behalf."

estate and to remove the Bank of Boston Connecticut as executor. Thereafter, the Bank of Boston Connecticut tendered its resignation as executor of the estate and, on December 19, 1996, the Probate Court appointed William W. Gager, Jr., as administrator c.t.a.

In 1997, William W. Gager, Jr., commenced this action as administrator c.t.a. of the estate.[5] Due to his declining health, however, his daughter, Sarah Whelan, was appointed successor administrator c.t.a., d.b.n., of the estate, and subsequently, was substituted as the plaintiff in this matter. A trial to the court was held on May 16, 2001, during which the parties introduced testimonial and documentary evidence. Thereafter, the court issued a memorandum of decision and rendered judgment for the defendant. In its memorandum of decision, the court determined that (1) "because the agreement clearly and unambiguously states that only attorney Gager or his executor may 'have the name Gager dropped from the firm name,' [the] court will not imply such terms to include all duly appointed successors" and (2) a reasonable balancing of the equities did not weigh in favor of the substitute plaintiff because she failed "to demonstrate that she would suffer any actual harm, financial or otherwise, should the firm retain the Gager name," whereas "a fair preponderance of the evidence indicates that removal of the name would cause [the] defendant to suffer significant harm, financial and otherwise." This appeal followed. Additional facts will be set forth as necessary.

I

The substitute plaintiff claims that the court improperly determined, under the terms of the retirement agreement, that she and the original plaintiff lacked the power to compel the defendant to remove the name "Gager" from its name. She argues that the agreement

---

[5] The defendant filed an answer, special defenses and a counterclaim.

authorizes the "executor" of attorney Gager's estate to have the name "Gager" dropped from the firm's name and that for purposes of interpreting the agreement, the term "executor" is synonymous and interchangeable with the term "administrator" and includes successor administrators. In response, the defendant argues that the court properly determined that the agreement was clear and unambiguous, and, accordingly, gave effect to the agreement's plain language. We begin by setting forth our standard of review.

"Although ordinarily the question of contract interpretation, being a question of the parties' intent, is a question of fact . . . [w]here there is definitive contract language, the determination of what the parties intended by their contractual commitments is a question of law." (Citations omitted; internal quotation marks omitted.) *Levine* v. *Massey*, 232 Conn. 272, 277–78, 654 A.2d 737 (1995). "When . . . the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct . . . ." (Internal quotation marks omitted.) *Issler* v. *Issler*, 250 Conn. 226, 236, 737 A.2d 383 (1999); *Marquardt & Roche/Meditz & Hackett, Inc.* v. *Riverbend Executive Center, Inc.*, 74 Conn. App. 412, 418, 812 A.2d 175 (2003).

"[T]he interpretation and construction of a written contract present only questions of law, within the province of the court . . . so long as the contract is unambiguous and the intent of the parties can be determined from the agreement's face . . . ." (Internal quotation marks omitted.) *Tallmadge Bros., Inc.* v. *Iroquois Gas Transmission System, L.P.*, 252 Conn. 479, 495, 746 A.2d 1277 (2000), quoting 11 S. Williston, Contracts (4th Ed. 1999) § 30:6, pp. 77–80. "A court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity, and words do not become ambiguous simply because lawyers or laymen contend

for different meanings." *Marcolini* v. *Allstate Ins. Co.*, 160 Conn. 280, 284, 278 A.2d 796 (1971). "When the plain meaning and intent of the language is clear, a clause . . . cannot be enlarged by construction. There is no room for construction where the terms of a writing are clear and unambiguous, and it is to be given effect according to its language." (Internal quotation marks omitted.) *Bonito* v. *Cambridge Mutual Fire Ins. Co.*, 64 Conn. App. 487, 493, 780 A.2d 984, cert. denied, 258 Conn. 926, 783 A.2d 1028 (2001).

The parties' dispute centers on the meaning of the term "executor" and, specifically, on whether that term, as set forth in paragraph four of the agreement, includes any duly appointed successor administrator c.t.a. In its memorandum of decision, the court recognized that "[w]hile the powers vested in an executor and an administrator are virtually the same, the *terms* themselves are different in that executors are chosen directly by the testator," whereas administrators are appointed by the court. (Emphasis added.) See *McAdams* v. *Starr*, 74 Conn. 85, 86–87, 49 A. 897 (1901); G. Wilhelm, Settlement of Estates in Connecticut (2d Ed. 2000) § 2:68, p. 2-36; see also General Statutes §§ 45a-233 (a) (1), 45a-290; 31 Am. Jur. 2d, Executors and Administrators §§ 5, 6 (2002). We agree with the court that paragraph four of the agreement clearly and unambiguously provides that only attorney Gager himself, or his "executor," may request that the "Gager" name be removed from the firm's name.[6] The term "executor," *as expressed in the*

---

[6] In its memorandum of decision, the court sought to determine attorney Gager's intent and determined, first, that paragraph four of the agreement clearly and unambiguously provided that only attorney Gager himself, or his executor, could request that the "Gager" name be removed from the firm's name. The court aptly observed and concluded that "[f]rom the evidence, [the] court is cognizant of the fact that attorney Gager devoted the majority of his legal career to the practice of trust and estate work, and that he did so over the course of approximately fifty years. That being said, if attorney Gager had intended that any duly appointed successor could remove the Gager name from the law firm, it would have been so noted in the agreement. . . . In the written agreement, attorney Gager entrusts only

*agreement*, therefore, does not include duly appointed successor administrators, such as the substitute plaintiff. We conclude that the court's determination was legally and logically correct and accordingly, we reject the substitute plaintiff's first claim.[7]

## II

Next, the substitute plaintiff claims that the court improperly applied principles of equity in balancing the

himself and his executor with the power to remove his name from the law firm. If attorney Gager had intended such a power to extend to court-appointed administrators like the plaintiff, he could have specifically provided for such within the terms of the agreement. [The] court finds that because the agreement clearly and unambiguously states that only attorney Gager or his executor may 'have the name Gager dropped from the firm name,' [the] court will not imply such terms to include all duly appointed successors."

[7] We are unpersuaded by the substitute plaintiff's contention that the agreement must be construed in the context of attorney Gager's overall estate plan and in accordance with the principles governing personal and ordinary powers of fiduciaries. The substitute plaintiff insists that implicit in the court's decision is an incorrect determination that the power to compel removal of the "Gager" name was a personal or special fiduciary power, i.e., one that does not survive the death of the original fiduciary, as opposed to an ordinary power that is transferable to successor trustees. See *Pratt v. Stewart*, 49 Conn. 339, 341 (1881) (special or personal powers of fiduciaries distinguished from ordinary powers); see generally *South End Bank & Trust Co. v. Hurwitz*, 128 Conn. 204, 207, 21 A.2d 407 (1941); *Whitaker v. McDowell*, 82 Conn. 195, 197, 72 A. 938 (1909).

The substitute plaintiff maintains in her principal brief that "[t]he very fact that [attorney] Gager appointed Colonial Bank [and Trust Company in his will] as a corporate fiduciary [executor] that could not 'die' suggests that he regarded *any* power he granted the Bank as an 'ordinary' one." (Emphasis in original.) Contrary to the substitute plaintiff's assertions, however, a review of the court's decision reveals that it is not predicated on a determination that the power to compel removal of the name was a personal or special power of the executor. Rather, as previously discussed, the court gave effect to what it determined was the clear and definitive language contained in paragraph four of the agreement. Furthermore, the substitute plaintiff's argument improperly assumes the existence of an ambiguity in the agreement that would justify reliance on evidence outside the four corners of the agreement. See *Levine v. Massey*, supra, 232 Conn. 278 n.7 (recognizing general rule of contract construction that unambiguous contract provisions are to be given their plain meaning without reference to evidence outside four corners of agreement).

equities in favor of the defendant. She argues that under the agreement, the right to compel the defendant to stop using the "Gager" name is absolute and unconditional, and, thus, may be enforced without an articulation or demonstration of any reason or harm. She argues, furthermore, that notwithstanding that unfettered right to demand enforcement, she *did* articulate a reasonable basis for compelling the defendant to stop using the "Gager" name,[8] and, by contrast, the defendant failed to demonstrate that it would be harmed by a change to its name. In response, the defendant maintains that the court properly balanced the equities in reaching its decision to deny an award of specific performance to the substitute plaintiff.

In its memorandum of decision, the court articulated the following as an independent ground for denying the request for specific performance: "[A] reasonable balancing of the equities precludes the plaintiff from requesting that the Gager name be removed from the firm name based upon the plaintiff's failure to demonstrate that she would suffer any actual harm, financial or otherwise, should the firm retain the Gager name. While the plaintiff is not harmed by nonremoval, a fair

---

[8] The substitute plaintiff asserts that the deposition testimony of the original plaintiff, William W. Gager, Jr., administrator c.t.a., dated August 17, 1999, furnishes the reasonable basis to support a decision to compel the defendant to stop using the "Gager" name. Specifically, she focuses on portions of the deposition in which the original plaintiff testified about a conversation he had had with his father, attorney Gager, in which attorney Gager expressed a desire that following his retirement, the firm would continue to adhere to the morals and standards that he had established, and that after Donald W. Henry, one of attorney Gager's original law partners, left the firm, the original plaintiff believed that the defendant "wasn't the same firm" it had been and that there was a lack of adherence to the tone of attorney Gager's principles.

In response, the defendant focuses on, inter alia, portions of the deposition in which the original plaintiff admitted that the firm had not discredited the "Gager" name or done anything to embarrass the "Gager" name or family, and that he, himself, had not been embarrassed by attorney Gager's association with the firm.

preponderance of the evidence indicates that removal of the name would cause [the] defendant to suffer significant harm, financial and otherwise."

We note that "[t]he specific performance remedy is a form of injunctive decree in which the court orders the defendant to perform the contract. . . . The specific performance decree originated in the old equity courts and continues today to be thought of as an equitable remedy, with the usual attributes of such remedies." (Internal quotation marks omitted.) *Marquardt & Roche/Meditz & Hackett, Inc.* v. *Riverbend Executive Center, Inc.*, supra, 74 Conn. App. 421 n.2. "The availability of specific performance is not a matter of right, but depends rather upon an evaluation of equitable considerations." *Kakalik* v. *Bernardo*, 184 Conn. 386, 395, 439 A.2d 1016 (1981); see also *Syncsort, Inc.* v. *Indata Services*, 14 Conn. App. 481, 484, 541 A.2d 543 ("by bringing an equitable action for specific performance the plaintiff brings all principles of equity into consideration"), cert. denied, 209 Conn. 804, 548 A.2d 443 (1988).

"The determination of what equity requires in a particular case, the balancing of the equities, is a matter for the discretion of the trial court."[9] *Kakalik* v. *Bernardo*, supra, 184 Conn. 395; *Kubish* v. *Zega*, 61 Conn. App. 608, 615, 767 A.2d 148, cert. denied, 255 Conn. 949, 769 A.2d 62 (2001). In balancing the equities, the court is

[9] "There is a general principle that a court of equity will 'balance the equities' between the parties in determining what, if any, relief to give. The equities on both sides must be taken into account in considering an appeal to a court's equitable powers. An equity court wisely considers the relative positions of the parties and makes a decree that does substantial justice to all. It is the duty of a court of equity to strike a proper balance between the needs of the plaintiff and the consequences of giving the desired relief. . . . [C]ourts should not intervene unless the need for equitable relief is clear, not remote or speculative. Thus, a court of equity should not grant an award which would be disproportionate in its harm to the defendant and its assistance to the plaintiff." 27A Am. Jur. 2d 588, Equity § 102 (1996).

not "bound by a formula but is free to fashion relief 'molded to the needs of justice.' " *Hall* v. *Dichello Distributors, Inc.*, 6 Conn. App. 530, 540, 506 A.2d 1054, cert. denied, 200 Conn. 807, 512 A.2d 230 (1986), quoting *Montanaro Bros. Builders, Inc.* v. *Snow*, 4 Conn. App. 46, 54, 492 A.2d 223 (1985); see also 71 Am. Jur. 2d, Specific Performance § 94 (2001).

Thus, "[o]ur standard of review is whether the trial court abused its discretion. . . . In determining whether the trial court has abused its discretion, we must make every reasonable presumption in favor of the correctness of its action. . . . Our review of a trial court's exercise of the . . . discretion vested in it is limited to the questions of whether the trial court correctly applied the law and could reasonably have reached the conclusion that it did." (Internal quotation marks omitted.) *Kubish* v. *Zega*, supra, 61 Conn. App. 615.

The fact that specific enforcement of a contract would be of little benefit to the plaintiff, but a burden on the defendant, is sufficient ground for the court, in its discretion, to refuse to decree its performance. See 71 Am. Jur. 2d, supra, § 94.[10] At trial, the substitute

---

[10] "The relative burden imposed upon the defendant as compared with the benefit the plaintiff will derive from the performance of a contract may be a ground for a court's refusal to direct specific performance. Thus, in determining whether to grant a decree of specific performance, a court may weigh the cost and expense that specific enforcement of the contract in question would impose on the defendant as compared with the benefit the plaintiff would receive from the performance, and enforcement may be refused if the burden would be much in excess of the benefit. The fact that specific enforcement of a contract would be of a little benefit to the plaintiff, but a burden upon the defendant, is also sufficient ground for the court, in its discretion, to refuse to decree its performance. If the specific enforcement of an agreement would result in great injury to the defendant with comparatively little good to the plaintiff, so that the result would be more spiteful than just, equity will not decree specific performance. The discretion of the court will be exercised by refusing specific performance if, in view of changed conditions or other circumstances, a decree would be very unjust to one party, as compared to the material benefit to the other." 71 Am. Jur. 2d 99, supra, § 94.

plaintiff testified that she has not used the name "Gager," her maiden name, since her marriage in 1987, and that she knows of no confusion caused for her or any family member from the firm's use of the name. By contrast, the defendant's witness, Carl A. Peterson, a partner in the defendant firm since 1967, testified that for several decades, the name "Gager" has been synonymous with the firm and continues to signify the firm's identity, and that the firm often is referred to simply as "Gager" in the profession and community. He further testified that for many years, particularly since the 1970s, the firm has expended large sums of money and devoted substantial efforts to promote the firm's name and reputation, using its first name "Gager" as its identifying feature. The defendant introduced thirty-one exhibits into evidence to exemplify the types of efforts it made to promote and to preserve the firm's identity with the name "Gager."[11] Peterson testified that the loss of the name "Gager" as the defendant's first name would require the firm to devote substantial sums of money and to make other efforts toward addressing the change, and that it would engender uncertainty and concern among its clientele, as well as other harms.

On the basis of our review, we conclude that the court correctly applied the law and reasonably could have reached its conclusion that "a reasonable balancing of the equities" did not weigh in favor of the substitute plaintiff. Consequently, we conclude that the court did not abuse its discretion in denying the substitute plaintiff's request for specific performance.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[11] The defendant's exhibits included, among other things, listings in law directories and yellow pages, web pages, external and internal signage at the firm's office locations, power of attorney forms, business cards, newspaper announcements, firm brochures, mousepads, stationery and pens.