NEW ENGLAND RETAIL PROPERTIES, INC. *v.*
MILDRED MATURO, EXECUTRIX (ESTATE
OF JOSEPH P. MATURO)
(AC 27382)

Gruendel, Lavine and Foti, Js.

Argued February 21—officially released July 17, 2007

*William F. Gallagher*, with whom, on the brief, was *Hugh D. Hughes*, for the appellant (defendant).

*Thomas P. Moriarty*, for the appellee (plaintiff).

*Opinion*

LAVINE, J. The law is well settled that a commercial real estate broker who finds a lessee ready, willing and able to lease the subject premises on the owner's terms is entitled to a commission pursuant to the provisions of the valid listing agreement. See, e.g., *Goldblatt Associates* v. *Panza*, 24 Conn. App. 250, 252, 587 A.2d 433 (1991). In this appeal, the defendant, Mildred Maturo, executrix of the estate of Joseph P. Maturo, appeals

from the judgment of the trial court rendered in favor of the plaintiff, New England Retail Properties, Inc., requiring payment of its commission. The defendant claims that the court lacked subject matter jurisdiction to consider the action. She also claims that the court improperly (1) awarded a commission larger than the claim made to the decedent's estate,[1] (2) concluded that the plaintiff did not have a conflict of interest when it negotiated the lease and (3) concluded that the defendant failed to prove her second special defense. We affirm the judgment of the trial court.

The following facts are relevant to our resolution of the issues before us. On November 2, 2000, the plaintiff and the decedent executed an open listing agreement[2] for real property located on Dixwell Avenue in Hamden. The agreement called for a 6 percent commission, payable in three parts, calculated on the total fixed annual rent for the term of the lease, which was twenty years. After the listing agreement was executed, the plaintiff disclosed to the decedent that its client, the 7-Eleven Corporation (7-Eleven), was interested in leasing the property. The decedent signed two letters of intent with 7-Eleven, one on November 30, 2000, and the other on January 3, 2001. The second letter of intent reflected an increase in rent that the plaintiff had negotiated. Both letters stated that the plaintiff represented 7-Eleven and

[1] The decedent, Joseph Maturo, was the defendant's husband.

[2] An open listing is "an offer looking to a unilateral contract; that is, an offer that is accepted by performance. Although the property owner promises to pay the listing broker his commission when he produces a ready, willing and able buyer, he does not seek a promise in return from the broker, but only performance of the act requested. . . . The traditional open listing merely gives a broker permission to [lease] real property within a specified time. Since it is unsupported by consideration, an open listing may, in the absence of part performance or action in reliance, be revoked at any time before the broker's performance without the property owner incurring any obligation." (Citations omitted.) *Real Estate Listing Service, Inc.* v. *Real Estate Commission*, 179 Conn. 128, 133, 425 A.2d 581 (1979).

that the decedent agreed to pay the plaintiff's commission.

Attorney William F. Gallagher represented the decedent throughout the lease negotiations with 7-Eleven, which also was represented by an attorney. An addendum to the lease set forth the annual rent over the twenty year period, which fixed the total rent of $1,251,275, requiring a commission of $75,076.50 pursuant to the listing agreement. The lease was signed by the decedent on August 3, 2001, and by 7-Eleven on November 1, 2001. On or about November 3, 2002, 7-Eleven opened a gasoline station and convenience store on the site.

In November, 2003, the plaintiff sent the decedent an invoice for the first installment of its commission. The decedent did not respond. Consequently, the plaintiff sent a second invoice and letter to Gallagher requesting payment. On April 27, 2004, Gallagher sent a letter to the plaintiff with the first installment payment. The letter stated the following: "As indicated in my telephone message, the amount of the total bill is disputed, as you are valuing the lease . . . in excess of $1,000,000 without reducing the lease to present value for the purpose of assessing your fee."

Approximately six months later, the plaintiff sent Gallagher an invoice for the second installment. On October 28, 2004, Gallagher responded that the decedent had died and that the defendant was the fiduciary of his estate. In this letter, Gallagher once again asserted that the plaintiff must reduce its commission to account for present value. He stated: "I have . . . advised you in the past that value of the lease over the twenty year period on which your fee of 6 [percent] is computed is wrong. If [you are] going to charge [your] fee due at the present time, you have to reduce the future value of the lease to present value and then compute the 6

[percent]." Gallagher did not send payment with this letter.

On November 5, 2004, the plaintiff sent an invoice for the second installment to attorney Michael D. Saffer, counsel for the estate, and sent a bill to the defendant on November 30, 2004, stating that it was filing a claim against the estate for $40,040. On December 8, 2004, the plaintiff received a response from Saffer, stating that the claim was being "investigated and reviewed" by Gallagher. The plaintiff received no further payments and commenced this action on December 17, 2004. Thereafter, the defendant filed an answer asserting four special defenses.[3]

Just prior to trial, the plaintiff discovered that it had made a calculation error in the amount due and consequently had tendered a claim to the estate for approximately $15,000 less than actually was owed. The plaintiff sent a corrected invoice to the defendant showing an outstanding balance of $55,056.10.

At trial, Gallagher acknowledged that he knew about the error prior to the plaintiff's informing him of it and that he chose not to communicate it to the plaintiff. Also at trial, the court heard testimony from both Matthew J. Halprin, the plaintiff's agent, and Bruce Cagenello, an expert witness, that real estate commissions are freely negotiable, that the commission was within the normal

---

[3] The defendant alleged the following special defenses: (1) "[t]he commission provision . . . of the listing agreement is ambiguous and therefore should be construed against the plaintiff," (2) "[a]ny commission seeking the value of the lease into the future for [twenty] years which is not discounted to present value is unconscionable and therefore unenforceable," (3) "[t]he commission provision of the listing agreement must be adjusted for any suspension in payment by 7-Eleven based on disputed environmental or other issues for which 7-Eleven and the [decedent's] estate are at issue" and (4) no commission is due because "[t]he plaintiff or its principals failed to disclose all facts which would have disclosed a conflict of interest on the part of the plaintiff and its principals."

range of commissions and that they had never seen or heard of a commission being reduced to present value.

On January 20, 2006, the court issued a memorandum of decision in which it concluded that the plaintiff had proved by a preponderance of the evidence that it is entitled to its commission and that the defendant failed in her proof as to all four special defenses. The court concluded that the plaintiff's claim made to the decedent's estate was not deficient according to "the evidence or law" and found that the estate owed the plaintiff $55,056.10. This appeal followed. Additional facts will be set forth as necessary.

I

The defendant claims that the court lacked subject matter jurisdiction over the plaintiff's action. "[O]nce the question of lack of jurisdiction of a court is raised . . . [it] must be disposed of no matter in what form it is presented . . . and the court must fully resolve it before proceeding further with the case." (Internal quotation marks omitted.) *Pine* v. *Dept. of Health*, 100 Conn. App. 175, 179, 917 A.2d 590 (2007). We therefore must consider first the defendant's jurisdictional claim before we can reach her other claims, if at all. Specifically, the defendant claims that the court considered the action prematurely, namely, before the estate had rejected the claim as required pursuant to General Statutes § 45a-363 (a). We are unpersuaded.

Subject matter jurisdiction involves the authority of a court to adjudicate the type of controversy presented to it. It exists if the court has the power to hear and determine cases of the general class to which the particular proceeding belongs. *Statewide Grievance Committee* v. *Burton*, 282 Conn. 1, 6–7, 917 A.2d 966 (2007). If a tribunal has the authority to decide the class of case, the issue of jurisdiction should be resolved in favor of its existence. *Spencer* v. *Star Steel Structures*,

*Inc.*, 96 Conn. App. 142, 150, 900 A.2d 42, cert. denied, 280 Conn. 914, 908 A.2d 539 (2006).

Although the defendant frames the issue as implicating the court's subject matter jurisdiction, it is viewed more properly as a question of statutory authority. "Although related, the court's authority to act pursuant to a statute is different from its subject matter jurisdiction. The power of the court to hear and determine, which is implicit in jurisdiction, is not to be confused with the way in which that power must be exercised in order to comply with the terms of the statute." (Internal quotation marks omitted.) *Amodio* v. *Amodio*, 247 Conn. 724, 728, 724 A.2d 1084 (1999).

General Statutes § 45a-363 (a) provides: "No person who has presented a claim shall be entitled to commence suit unless and until such claim has been rejected, in whole or in part, as provided in [General Statutes §] 45a-360." Section 45a-360 (a) provides that the "fiduciary shall: (1) Give notice to the person presenting a claim of the rejection of all or any part of his claim, (2) give notice to any such claimant of the allowance of his claim, or (3) pay the claim."

In the present case, the court found that the defendant had rejected the claim, stating that the plaintiff sent a bill to "Gallagher, who responded that the plaintiff must reduce the fee to 'present value.' [The] [p]laintiff also sent its bill to . . . Saffer, who represented [the estate]. He responded that the claim was being investigated by . . . Gallagher. After an initial payment by the defendant of $20,000, no further payment was ever received on the outstanding balance of $55,056.10."

It is well established that we will overturn a court's findings of fact only if they are clearly erroneous. "A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing

court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Welsch* v. *Groat*, 95 Conn. App. 658, 661–62, 897 A.2d 710 (2006).

Our review of the record reveals evidence to support the finding that the estate rejected the claim. By his letters of April 27 and October 28, 2004, Gallagher had informed the plaintiff that the estate would not pay the commission unless it was reduced to present value. As we noted previously, Gallagher stated in the October 28, 2004 letter that "I have . . . advised you in the past that value of the lease over the twenty year period on which your fee of 6 [percent] is computed is wrong. If [you are] going to charge [your] fee due at the present time, you have to reduce the future value of the lease to present value and then compute the 6 [percent]." The October 28, 2004 letter concluded with the following sentence: "In any event I suggest that you proceed in accordance with the law." Such a "suggestion" can only be construed as an invitation to bring suit. The defendant does not contest now, nor did she contest at trial, that Gallagher refused to pay the commission as set forth explicitly in the listing agreement. Given that Gallagher twice gave notice to the plaintiff that the estate would not pay the commission as agreed to by the parties unless the plaintiff reduced it to present value and his suggestion that the plaintiff "proceed in accordance with the law," the court's finding that the claim was rejected was not clearly erroneous. We conclude, therefore, that § 45a-363 did not bar the court from adjudicating the plaintiff's claim.

II

The defendant next claims that the court improperly awarded the plaintiff the amount claimed on the eve of trial rather than the amount it originally submitted to the estate. Gallagher admitted at trial that he knew

the proper amount of the claim prior to the plaintiff's discovery of the calculation error. In her brief, the defendant asserts that the plaintiff should have been precluded from correcting the amount of its claim on the eve of trial. Specifically, the defendant claims that pursuant to General Statutes §§ 45a-358[4] and 45a-363 (a), the creditor must make a specific claim, in the form of a specific dollar amount, against the estate and that the creditor is not permitted to alter the claim after its rejection and the initiation of suit. We disagree.

Our reading of §§ 45a-358 and 45a-363 (a) and the statutory scheme of which they are a part indicates that the purpose of presenting claims in writing to the fiduciary of the estate is to give him or her notice of the claim in order to facilitate the speedy settlement of estates. See *Kubish* v. *Zega*, 61 Conn. App. 608, 620, 767 A.2d 148, cert. denied, 255 Conn. 949, 769 A.2d 62 (2001). In this case, the plaintiff corrected the amount of its claim on the eve of trial because it realized that it had made a calculation error. The plaintiff provided the fiduciary with written notice of the claim as required pursuant to § 45a-358. The defendant was aware of the correct amount prior to the plaintiff's informing her of it and does not allege that she lacked notice or otherwise suffered prejudice. Accordingly, the defendant was not prejudiced in any way by the plaintiff's correction.

We are unpersuaded by the defendant's reliance on General Statutes § 45a-395 for her assertion that §§ 45a-358 and 45a-363 (a) should be construed to forbid a creditor from correcting its claim after the estate has rejected it. Section 45a-395 requires a decedent's creditors to give notice of their claims to the estate prior to a date set by the Probate Court. The relevant part of the statute provides that "[t]he amount of a claim may

---

[4] General Statutes § 45a-358 (a) provides in relevant part: "Every claim shall be presented to the fiduciary in writing. . . ."

not be increased after the time for the presentation of such claim has expired." General Statutes § 45a-395 (e). This statute is inapplicable because General Statutes §§ 45a-390 through 45a-419 "apply with respect to decedents dying before October 1, 1987." General Statutes § 45a-390. Here, the decedent died in 2003. Even if it were applicable, our Supreme Court in *Cadle Co.* v. *D'Addario*, 268 Conn. 441, 844 A.2d 836 (2004), expressly rejected the argument that § 45a-395 requires that the exact amount of the claim be known to the executors prior to the date set by the Probate Court. In that case, the court stated that the estate must be aware only of "the extent of the demand and the character of the transaction out of which it grew." (Internal quotation marks omitted.) Id., 448. "To hold otherwise would thwart the purpose of the statute, namely, expedient estate settlement, and would enable executors to avoid paying the decedent's debts." Id., 449. We conclude that because the defendant knew of the demand, the character of the transaction and the miscalculation, the court properly awarded the plaintiff the full amount of its commission.

## III

The defendant's third claim is that the court improperly concluded that the plaintiff had no conflict of interest when it negotiated the lease between the decedent and 7-Eleven. We are unpersuaded.

The court made the following relevant findings of fact. "[F]rom the very beginning, the plaintiff's employee . . . Halprin, and [the decedent] conversed about the possibility of leasing [the] property. Halprin indicated that he had several prospective tenants interested in the property. Subsequently, two letters of intent were signed . . . which clearly stated that the plaintiff represented 7-Eleven and that [the decedent] would pay the plaintiff's commission. The [decedent] could have

retained another broker at any time before the lease signing within the parameters of the open listing agreement. The [decedent] was aware at all times during the negotiations that the plaintiff's client was 7-Eleven and not [the decedent]. The plaintiff, however, pursuant to its promise to the [decedent], [attempted] to and did successfully negotiate a higher rent for the [decedent], all of this with [his] knowledge and consent. . . . As previously stated, all of the plaintiff's actions were known to and approved by . . . [the decedent], which the defendant now claims were unethical. The plaintiff presented its expert . . . Cagenello, on the subject, who testified that as long as everybody knows what the situation is, there is no conflict of interest. The court credits this testimony and finds that the [decedent], represented by . . . Gallagher, knew of the plaintiff's representation, found no fault with it and benefited to his satisfaction from the rent increase obtained by the plaintiff. . . . In this case, the credible evidence is that the plaintiff violated no codes of conduct applicable to real estate brokers . . . ." (Citation omitted.)

Whether the plaintiff had a conflict of interest when it negotiated a lease is a question of fact. See *Burton* v. *Mottolese*, 267 Conn. 1, 44, 835 A.2d 998 (2003), cert. denied, 541 U.S. 1073, 124 S. Ct. 2422, 158, L. Ed. 2d 983 (2004). We review the factual findings of the trial court under our well established clearly erroneous standard. *Welsch* v. *Groat*, supra, 95 Conn. App. 661.

In finding that there was no conflict of interest on the plaintiff's part, the court credited the expert testimony that the plaintiff violated no codes of conduct applicable to real estate brokers. This court discussed rules applicable to real estate brokers in *Licari* v. *Blackwelder*, 14 Conn. App. 46, 539 A.2d 609, cert. denied, 208 Conn. 803, 545 A.2d 1100 (1988). "A real estate broker is a fiduciary. . . . As such, he is required to

exercise fidelity and good faith, and cannot put himself in a position antagonistic to his principal's interest . . . by fraudulent conduct, acting adversely to his client's interests, or by failing to communicate information he may possess or acquire which is or may be material to his principal's advantage. . . .

"This rule requiring a broker . . . to act with the utmost good faith towards his principal places him under a legal obligation to make a full, fair and prompt disclosure to his employer of all facts within his knowledge which are, or may be material to the matter in connection with which he is employed, which might affect his principal's rights and interests, or his action in relation to the subject matter of the employment, or which in any way pertains to the discharge of the agency which the broker has undertaken." (Citations omitted; internal quotation marks omitted.) Id., 53–54.

We have reviewed the record, including the listing agreement and the testimony presented at trial, as well as the rules of conduct applicable to real estate brokers. On the basis of our review, we conclude that the court's finding that the plaintiff violated no codes of conduct applicable to real estate brokers was not clearly erroneous.

## IV

The defendant's final claim is that the court improperly found in favor of the plaintiff as to her second special defense that the commission should have been reduced to present value because a commission "seeking the value of the lease into the future [twenty] years which is not discounted to present value is unconscionable and therefore unenforceable." This claim is without merit.

"Our first consideration is the standard of review for a claim of unconscionability. [T]he question of unconscionability is a matter of law to be decided by the

court based on all the facts and circumstances of the case. . . . Our review on appeal is not limited to determining whether there has been clear error. . . . [T]he ultimate determination of whether a transaction is unconscionable is a question of law, not a question of fact, and . . . the trial court's determination on that issue is subject to a plenary review on appeal. *It also means, however, that the factual findings of the trial court that underlie that determination are entitled to the same deference on appeal that other factual findings command.* Thus, those findings must stand unless they are clearly erroneous. . . .

"The purpose of the doctrine of unconscionability is to prevent oppression and unfair surprise. . . . [T]he doctrine of unconscionability draws heavily on its counterpart in the Uniform Commercial Code which, although formally limited to transactions involving personal property, furnishes a useful guide for real property transactions. . . . [T]he basic test is whether, in the light of the general commercial background and the commercial needs of the particular trade or case, the clauses involved are so one-sided as to be unconscionable under the circumstances existing at the time of the making of the contract. . . . Unconscionability is determined on a case-by-case basis, taking into account all of the relevant facts and circumstances." (Emphasis in original; internal quotation marks omitted.) *Monetary Funding Group, Inc.* v. *Pluchino*, 87 Conn. App. 401, 411–12, 867 A.2d 841 (2005).

In the present case, the court expressly held that the defendant had failed to prove her special defense, stating that "[n]o evidence was presented that the commission in this case was excessive. Certainly, there is nothing in the contract that is ambiguous as to the amount of commission payable. Further, the defendant has cited no authority in law to support the 'present value' claim."

It is axiomatic that "[t]he purpose of a special defense is to plead facts that are consistent with the allegations of the complaint but demonstrate, nonetheless, that the plaintiff has no cause of action." (Internal quotation marks omitted.) *Fidelity Bank* v. *Krenisky*, 72 Conn. App. 700, 705–706, 807 A.2d 968, cert. denied, 262 Conn. 915, 811 A.2d 1291 (2002). In support of its breach of contract claim, the plaintiff presented the signed listing agreement, which states that the decedent agreed to pay the plaintiff in three installments "6 [percent] of the initial lease value defined as the fixed annual rent payable for the term of the lease." As required by General Statutes § 20-325b, the agreement explicitly provided that "the amount or rate of real estate broker compensation is not fixed by law. It is set by each broker individually and may be negotiable between you and the broker."

Our review of the record reveals that the defendant failed to support her contention that failing to reduce the commission to present value was unconscionable. The defendant's expert, Gary Crakes, a professor of economics, testified that he had never negotiated a commission agreement, is not a licensed real estate broker, is not familiar with brokerage procedures, is not familiar with commercial leasing practices and is not an expert in interpreting contracts. The court found, however, that "[t]he plaintiff presented evidence from the chairman of the Connecticut real estate commission . . . Cagenello, who testified that he had never seen or heard of a commission such as this being reduced to present value, and the commission here was not unusual." The court credited Cagenello's testimony. See *Kelly* v. *New Haven*, 275 Conn. 580, 607 n.31, 881 A.2d 978 (2005) ("[i]t is the sole province of the trial court to weigh and interpret the evidence before it and to pass upon the credibility of witnesses" [internal quotation marks omitted]).

Because "[t]he party claiming unconscionability bears the burden of proof"; *Emlee Equipment Leasing Corp.* v. *Waterbury Transmission, Inc.*, 31 Conn. App. 455, 464, 626 A.2d 307 (1993); the defendant's mere assertion of unconscionability, without more than a citation to the Rules of Professional Conduct applicable to attorneys, is insufficient to establish the special defense.[5] The fact that a party to a contract comes to regret one of its provisions does not render the contract unconscionable. The court's determination that the defendant had failed in her proof to establish the special defense was legally correct.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[5] By referencing the Rules of Professional Conduct applicable to attorneys, the defendant suggests that because a real estate broker is a fiduciary under Connecticut law, just as an attorney is, brokers should be required to reduce their commission fees to present value. The defendant cites no legal support for this argument. We are unpersuaded by the analogy.