R. F. DADDARIO & SONS, INC. *v.*
IRA N. SHELANSKY ET AL.
(AC 30802)

Bishop, Robinson and Alvord, Js.

Argued May 28—officially released September 14, 2010

*Timothy Brignole*, with whom, on the brief, was *Bozena Wysocki*, for the appellant (named defendant et al.).

*John M. Wyzik*, for the appellee (plaintiff).

*Opinion*

ALVORD, J. The defendants Ira N. Shelansky and Linda J. Shelansky[1] appeal from the judgment of foreclosure by sale rendered in favor of the plaintiff, R. F. Daddario & Sons, Inc. The defendants claim that the trial court improperly (1) determined that the plaintiff had standing to bring this action, (2) determined that the plaintiff's delay in foreclosing the mortgage did not indicate an intent to abandon the mortgage or bar its action under the doctrine of laches, (3) failed to find that the defendants were under duress when they signed the subject note and mortgage and that the mortgage transaction was unconscionable and (4) failed to find that the plaintiff had unclean hands and committed

---

[1] Several subsequent encumbrancers also were named as defendants in this action, but they are not parties to this appeal. We therefore refer in this opinion to the Shelanskys as the defendants.

fraud in its dealings with them. We affirm the judgment of the trial court.

The following facts were found by the court or are not disputed. In 1987, the plaintiff began development of a condominium complex known as Oak Ridge in Windsor Locks and advertised the condominium units for sale "with no money down." The base offering price of each condominium unit was $128,900. The defendants signed a contract to purchase one of the units for $131,000, the higher price reflecting improvements and upgrades requested by the defendants. Citicorp Mortgage, Inc. (Citicorp), issued a mortgage loan commitment to the defendants in the amount of $117,900.

On September 12, 1988, the day of the closing, the defendants first went to the office of the plaintiff's president, Robert Daddario. He informed them that the plaintiff was offering them a second mortgage loan in the amount of $14,180, with interest at the rate of 12.5 percent per annum. The terms of the promissory note provided for fifty-nine monthly payments of $151.34 beginning on November 1, 1988, with a final balloon payment of $14,030.75 on November 1, 1993. The note further provided that interest would run at the rate of 14.5 percent per annum if the defendants were more than thirty days late with any payments due under the note. After Daddario explained the terms of the note, mortgage and truth in lending statement to the defendants, they signed the documents and were provided a bank check made payable to the attorney for Citicorp. The name of the mortgagee on the second mortgage was R. Daddario and Son, Inc. The transfer of title and the signing of the first mortgage loan documents then occurred in another room in the same building. The name of the grantor on the warranty deed was R. F. Daddario & Sons, Inc.

The defendants' payments on the second mortgage loan were somewhat erratic between November 1, 1988,

and December 1, 1991. In December, 1991, the defendants experienced financial difficulties and ceased making payments to the plaintiff. In December, 1997, the plaintiff brought suit on the note alone but withdrew the action two months later. In 1998, the defendants moved from their condominium unit and rented it to tenants until June, 2008. The plaintiff filed the present foreclosure action on January 17, 2008. The defendants filed fourteen special defenses and a five count counterclaim, alleging, inter alia, laches, unclean hands, unconscionability, duress, fraud, usury and a violation of the Connecticut Unfair Trade Practices Act, General Statutes § 42-110a et seq. The defendants sold their condominium unit in June, 2008, approximately six months after the filing of the plaintiff's complaint, for a purchase price of $179,900. The outstanding amount of principal and interest due on the first mortgage loan to Citicorp was paid from the proceeds of the sale. The balance of the proceeds was deposited into an escrow account pending the outcome of the present litigation.

The matter was tried to the court. On the first day of trial, the defendants filed a motion to dismiss, claiming that the plaintiff lacked standing to bring the action. Following the testimony of witnesses, the submission of exhibits and oral argument by counsel addressed to the issue of standing, the court ruled that the plaintiff did have standing to bring its claims and the trial continued. At the conclusion of the four day trial, the court issued its memorandum of decision. In that decision, the court denied the motion to dismiss and again stated that the plaintiff had standing and provided its factual determinations in support of that conclusion. The court further found that the defendants failed to prove any of their special defenses or the allegations of their counterclaim. In rendering judgment in favor of the plaintiff, the court, exercising its discretion, declined to award interest beyond January 1, 1997. Because a private sale

already had occurred, the court approved the sale and ordered that the plaintiff's debt be paid from the proceeds held in escrow. This appeal followed.

Before addressing the defendants' claims on appeal, we first address an issue raised by the plaintiff in its appellate brief and during oral argument before this court. The plaintiff claims that the defendants' appeal is moot because the funds from the escrow account already have been disbursed in accordance with the judgment of the trial court, and, therefore, there is no practical relief that can be afforded to the defendants.

Prior to filing its appellate brief, the plaintiff filed a motion to dismiss the appeal with this court, claiming that the appeal was moot because the plaintiff already had received the funds from the escrow account, released the second mortgage and filed a satisfaction of judgment with the trial court. The defendants opposed the motion to dismiss, arguing that the plaintiff's actions violated the automatic stay provisions of Practice Book § 61-11. This court denied the plaintiff's motion to dismiss on November 4, 2009.

In denying the motion to dismiss, this court already has reviewed the claims in that motion to dismiss, and we will not review the same issues again. See *Greci* v. *Parks*, 117 Conn. App. 658, 666, 980 A.2d 948 (2009); *Santoro* v. *Santoro*, 33 Conn. App. 839, 841–42, 639 A.2d 1044 (1994). Contrary to the plaintiff's argument, we have subject matter jurisdiction and will review the claims of the defendants.

I

The defendants first claim that the court improperly determined that the plaintiff had standing to bring this foreclosure action. The defendants argue that the plaintiff lacked standing because the mortgagee on the second mortgage was R. Daddario and Son, Inc., whereas

this action was brought by a separate entity, R. F. Daddario & Sons, Inc. Because there was no assignment of the note and mortgage from R. Daddario and Son, Inc., to the plaintiff, the defendants claim that the plaintiff was not the holder of the note and did not have the right to enforce the mortgage.

"[A] party must have standing to assert a claim in order for the court to have subject matter jurisdiction over the claim. . . . Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless he has, in an individual or representative capacity, some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy." (Internal quotation marks omitted.) *Fleet National Bank* v. *Nazareth*, 75 Conn. App. 791, 793, 818 A.2d 69 (2003).

The gravamen of the defendants' argument is that the separate entity of R. Daddario and Son, Inc., was created by Daddario in order to provide second mortgage loans to the purchasers of the plaintiff's condominium units at Oak Ridge. They claim that Citicorp, as the holder of the first mortgage, prohibited any secondary financing as a condition of its loan and that Daddario created a fictitious company for secondary lending purposes to circumvent that prohibition. The plaintiff responds that the incorrect name of the mortgagee in the secondary loan documents is a typographical error. In support of their argument that the difference in the corporate names was not a typographical error, Ira Shelansky testified: (1) the second mortgage loan closing took place prior to the first mortgage loan closing, (2) Daddario instructed him not to reveal the source of the funds from the second mortgage loan closing and (3) the plaintiff's attorney at the first mortgage loan closing signed an affidavit provided by Citicorp that no portion

of the down payment for the purchase of the condominium unit had been borrowed. The defendants also submitted as exhibits at trial copies of second mortgages on several condominium units at Oak Ridge bearing the name R. Daddario and Son, Inc., as the mortgagee, copies of several releases of those mortgages signed by Daddario as president of R. Daddario and Son, Inc., and copies of letters to the defendants with the letterhead of R. Daddario and Son, Inc. For those reasons, the defendants claim that the court could not properly have concluded that R. Daddario and Son, Inc., and R. F. Daddario & Sons, Inc., were one and the same entity.

The court, in its oral ruling during the trial and in its memorandum of decision, made several factual determinations in support of its conclusion that R. Daddario and Son, Inc., was a misnomer and that the plaintiff, as the holder of the note and second mortgage, had standing to bring the foreclosure action. The court explicitly credited the testimony of Daddario and made the following findings: (1) R. Daddario and Son, Inc., was not a legal entity; (2) R. Daddario and Son, Inc., was not registered with the secretary of the state as a corporation and had no shareholders, officers or directors; (3) R. Daddario and Son, Inc., was a misnomer of the plaintiff's actual name, R. F. Daddario & Sons, Inc.; (4) the plaintiff's staff erroneously inputted the misnomer R. Daddario and Son, Inc., into the company's computer, and the mistake was perpetuated in the subsequent second mortgage loan documents generated by the computer; (5) both parties recognized that the plaintiff, R. F. Daddario & Sons, Inc., was the corporation involved in the subject transaction; (6) the defendants knew that the funds from that transaction came from the plaintiff; (7) R. Daddario and Son, Inc., could not have negotiated the note or assigned the mortgage to the plaintiff because R. Daddario and Son, Inc., was not a legal entity; (8) the variation in the two names was

minor;[2] and (9) the defendants suffered no prejudice whatsoever from the use of the plaintiff's incorrect name on the note and mortgage.

The defendants are challenging the factual determinations of the court. "[W]e will upset a factual determination of the trial court only if it is clearly erroneous. The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . We cannot retry the facts or pass on the credibility of the witnesses. A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Stohlts* v. *Gilkinson*, 87 Conn. App. 634, 640, 867 A.2d 860, cert. denied, 273 Conn. 930, 873 A.2d 1000 (2005).

The record amply supports the court's findings, particularly in light of the court's credibility determinations: "Daddario . . . testified that the name R. Daddario & Son, Inc., on the relevant documents in this case was a mistake of its staff. That name got into the computer, and it was repeated over and over again on documents. *The court believes this testimony*[3] and finds

---

[2] The court cited *Wyandot, Inc.* v. *Gracey Street Popcorn Co.*, 208 Conn. 248, 544 A.2d 180 (1988). In that case, our Supreme Court stated: "[A] minor deviation in the name of a corporation has little legal significance . . . . [I]t is the general rule that in case of a misnomer of a corporation in a grant, obligation or written contract, if there is enough expressed to show that there is such an artificial being and to distinguish it from all others, the corporation is sufficiently named although there is a variation of words and symbols." (Citation omitted; internal quotation marks omitted.) Id., 255.

[3] Daddario testified that the name R. Daddario and Son, Inc., was a typographical error; that all subsequent documents contained the erroneous name because of the initial word processing mistake; that all of the loan documents were supposed to reflect R. F. Daddario & Sons, Inc., as the note holder and mortgagee; that letters sent to the defendants with respect to late payments were printed from the computer and also had the incorrect name of the plaintiff in the letterhead; that the plaintiff had a primary

that R. Daddario & Son, Inc., is really the plaintiff." (Emphasis added.) "We cannot retry the facts or pass on the credibility of the witnesses." (Internal quotation marks omitted.) *Porter* v. *Morrill*, 108 Conn. App. 652, 664, 949 A.2d 526, cert. denied, 289 Conn. 921, 958 A.2d 152 (2008). For these reasons, we cannot conclude that the court's conclusion that the plaintiff had standing to bring this foreclosure action was improper.

## II

The defendants next claim that the court improperly determined that the plaintiff's delay in foreclosing the second mortgage did not signify its intent to abandon the mortgage or bar its foreclosure action under the doctrine of laches. Specifically, the defendants argue that the sixteen year delay from the time of the last payment made by the defendants in December, 1991, to the filing of this foreclosure action in January, 2008, was sufficient evidence of the intentional abandonment of the plaintiff's rights under the mortgage. The defendants also claim that the plaintiff's claims are barred under the equitable doctrine of laches because the defendants were prejudiced by the plaintiff's inexcusable delay.

telephone number but also used "rollover" telephone numbers and that different telephone numbers might appear on different documents and letterhead; that Citicorp had agreed to provide a no-asset verification loan that did not preclude secondary financing; that Citicorp, on occasion, erroneously included an affidavit in its closing documents that stated that there was no secondary financing involved in the transaction; that neither Daddario nor any of the plaintiff's representatives, to Daddario's knowledge, signed any of those affidavits; that the plaintiff switched to a different first mortgage lender because of the problem with the inclusion of the improper affidavits in Citicorp's closing documents; that the use of the plaintiff's incorrect name in the second mortgage loan documents continued even after Citicorp no longer was the first mortgage lender; that if he had noticed the incorrect name on the loan documents, he would have corrected it; and that if Citicorp had prohibited second mortgages and if he had wanted to defraud Citicorp as the first mortgage lender, he would have written the second mortgage loans through one of his other legally existing companies with a totally different name.

A

"It is the law of this state that a mortgagee may abandon his right of security under the mortgage. . . . Abandonment is a question of fact. To constitute it there must be an intention to abandon or relinquish accompanied by some act or omission to act by which such an intention is manifested." (Citations omitted.) *Brierley* v. *Johnson*, 131 Conn. 675, 678, 42 A.2d 34 (1945). "While mere nonuser and lapse of time alone are not enough to constitute abandonment, they are competent evidence of an intent to abandon, and as such may be entitled to great weight when considered with other circumstances, and abandonment may be inferred from circumstances, such as failure by acts or otherwise to assert any claim to the right alleged to have been abandoned, or may be presumed from long continued neglect. . . . Most frequently, where abandonment has been held established, there has been found present some affirmative act indicative of an intent to abandon, as in *Peck* v. *Lee*, [110 Conn. 374, 377, 148 A. 133 (1930)], where it was found that the mortgagee had destroyed the mortgage and the note which it secured, but nonuser, as of an easement[4] or other negative or passive conduct may be sufficient to signify the requisite intention and justify a conclusion of abandonment. The weight and effect of such conduct depends not only upon its duration but also upon its character and the accompanying circumstances." (Citations omitted.) *Glotzer* v. *Keyes*, 125 Conn. 227, 233, 5 A.2d 1 (1939).

In its memorandum of decision, the court, after referencing applicable case law on abandonment, addressed the defendants' argument as follows: "The evidence was

---

[4] Our Supreme Court subsequently clarified that a dominant owner's nonuse of an easement, standing alone, is never enough to effect an abandonment. See *Smith* v. *Muellner*, 283 Conn. 510, 529 n.16, 932 A.2d 382 (2007).

that the plaintiff did not foreclose because for a long time there was no equity in the property . . . Daddario knew the defendants had moved out, would eventually sell the property and the plaintiff would be paid. There was no proof whatsoever that [the] plaintiff intentionally abandoned its rights under the mortgage." The record supports the court's factual determinations.

Daddario testified that the plaintiff sent notices to the defendants when they were late with their mortgage payments. Among the copies of the notices submitted as evidence, there is a letter to the defendants regarding the payment due under the mortgage dated September 23, 1993, which is almost two years later than the date of their last payment in December, 1991. This contradicts the defendants' argument that the plaintiff did nothing from December, 1991, through January, 2008. Daddario further testified that the plaintiff brought an action against the defendants in 1997 to collect the amount due under the note.[5] That action was withdrawn.[6] Daddario explained that between 1992 and 1997, he did not attempt to foreclose the mortgage because he believed there was no equity in the condominium unit to justify the expenses associated with a foreclosure action. He indicated, however, that there had been some unsuccessful efforts to settle the matter between the parties. The plaintiff submitted into evidence two letters from the parties' attorneys, dated January 20 and June 7, 2004, discussing settlement proposals. Daddario testified that he made no further

---

[5] A mortgagee is entitled to pursue its remedy at law on the note or to pursue its remedy in equity on the mortgage or to pursue both. "A note and a mortgage given to secure it are separate instruments, executed for different purposes and in this State action for foreclosure of the mortgage and upon the note are regarded and treated, in practice, as separate and distinct causes of action, although both may be pursued in a foreclosure suit." (Internal quotation marks omitted.) *Monetary Funding Group, Inc.* v. *Pluchino*, 87 Conn. App. 401, 415, 867 A.2d 841 (2005).

[6] Daddario testified that the action was withdrawn because his time was consumed by another business project and by his father's health issues.

efforts to collect the debt between 2004 and 2008 because he knew the defendants wanted to sell their condominium unit and that they would have to address the second mortgage as an encumbrance at that time. From the testimony and the exhibits submitted at trial, we cannot conclude that the court's determination that the plaintiff did not intentionally abandon its rights under the mortgage was clearly erroneous.

B

The court also concluded that the defendants failed to prove that the plaintiff's delay in foreclosing the mortgage constituted laches. "The standard of review that governs appellate claims with respect to the law of laches is well established. A conclusion that a plaintiff has been guilty of laches is one of fact for the trier and not one that can be made by this court, unless the subordinate facts found make such a conclusion inevitable as a matter of law. . . . We must defer to the court's findings of fact unless they are clearly erroneous. . . .

"The defense of laches, if proven, bars a plaintiff from seeking equitable relief . . . . First, there must have been a delay that was inexcusable, and, second, that delay must have prejudiced the defendant. . . . The burden is on the party alleging laches to establish that defense. . . . The mere lapse of time does not constitute laches . . . unless it results in prejudice to the [opposing party] . . . as where, for example, the [opposing party] is led to change his position with respect to the matter in question." (Internal quotation marks omitted.) *Jarvis* v. *Lieder*, 117 Conn. App. 129, 149, 978 A.2d 106 (2009).

In the present case, the court focused on the second element of laches[7] and concluded that the defendants

---

[7] With respect to the first element of inexcusable delay, the court made no specific findings in its discussion addressing the defendants' special defense of laches. It did, however, make findings relative to the delay when

failed to prove that they had been prejudiced by the delay in bringing this foreclosure action. As found by the court: "Here, the only prejudice the defendants claim is that they lost some documents, which were damaged in their flooded basement, that might support the special defenses of fraud, duress and unclean hands. The only document that might have helped them to prove [those] defense[s] was the affidavit of no secondary [financing] purportedly signed by . . . Daddario or his representative. But . . . that affidavit was irrelevant because it did not prove any fraud or improper conduct perpetrated by the plaintiff upon the defendants."

As indicated by the trial court, and confirmed by our review of the record, the defendants' allegation of prejudicial delay is directed solely to their claim that various closing documents were destroyed when their basement flooded in 1998 and that the defendants' attorney at that time no longer had copies of their closing documents.[8] The only document specifically identified as being of some importance, however, was the affidavit of no secondary financing that was allegedly signed by Daddario or the plaintiff's attorney at the closing. The court, however, previously in its decision, found that Daddario "testified that his arrangement with [Citicorp] was for a no-asset verification transaction, and the prohibition of secondary financing in the bank's commitment form was not to be enforced. *The court believes*

it discussed the defendants' special defense of abandonment. As discussed in part II A of this opinion, Daddario's testimony provided reasons for the plaintiff's delay in bringing the action.

[8] We note, however, that trial exhibit twenty is a copy of the defendants' response to the plaintiff's request for production and that exhibit includes copies of the documents the defendants obtained from Citicorp or its successor in connection with the first mortgage loan closing. The defendants also submitted, as an exhibit at trial, a copy of the check they had received from the plaintiff at the second mortgage loan closing with Daddario. Ira Shelansky testified that, although all of the closing documents had been destroyed, he found the copy of the check in his wife's records.

. . . *Daddario on this point*." (Emphasis added.) Therefore, the production of such an affidavit would not have been helpful to the defendants' claims. Accordingly, on the basis of the record, we are unable to conclude that the court's finding that the defendants had not been prejudiced by the plaintiff's delay in bringing the foreclosure action was clearly erroneous.

## III

The defendants next claim that the court improperly failed to find that they were under duress when they signed the subject note and mortgage and that the mortgage transaction was unconscionable. The defendants argue that they signed the documents under duress and that the entire loan transaction was procedurally and substantively unconscionable because (1) the closing for the secondary financing was a separate transaction that took place in Daddario's office, (2) they were not provided copies of those documents prior to the closing and were unaware of the terms of repayment, (3) Citicorp prohibited secondary financing without its prior approval and (4) the plaintiff used a fictitious name to conceal the fact of the secondary financing.

## A

"For a party to demonstrate duress, it must prove [1] a wrongful act or threat [2] that left the victim no reasonable alternative, and [3] to which the victim in fact acceded, and that [4] the resulting transaction was unfair to the victim. . . . The wrongful conduct at issue could take virtually any form, but must induce a fearful state of mind in the other party, which makes it impossible for [the party] to exercise his own free will." (Internal quotation marks omitted.) *Cox* v. *Burdick*, 98 Conn. App. 167, 177–78, 907 A.2d 1282, cert. denied, 280 Conn. 951, 912 A.2d 482 (2006).

In its memorandum of decision, the court stated that these claims were "without merit." As previously indicated, the court found that the plaintiff's use of the incorrect name on the loan documents was an inadvertent error. The court also stated that it found credible Daddario's testimony that Citicorp had agreed to provide a no-asset verification loan that did not preclude secondary financing. Additionally, the court found that the defendants received what was promised to them in terms of the amount of financing available to them for the purchase of the condominium unit, that they were not pressured to sign the second mortgage loan documents in Daddario's office and that they had time to review those documents even if they chose not to do so. There is ample support in the record for the court's factual determinations,[9] and, accordingly, we cannot conclude that the defendants signed the loan documents under duress.

## B

"It is well established that [t]he question of unconscionability is a matter of law to be decided by the court based on all the facts and circumstances of the case. . . . Thus, our review on appeal is unlimited by the clearly erroneous [or abuse of discretion] standard. . . . This means that the ultimate determination of

---

[9] At trial, Ira Shelansky testified that he was a businessman; that he was aware that the same entity that was selling him the condominium unit was providing the secondary financing; that he knew that the money the plaintiff was providing to him was a loan and that there would be interest on that loan; that he never claimed that the second loan transaction was fraudulent between 1988 and 1993; that he did not have any regret signing the second mortgage loan documents at the time of the closing; that he voluntarily signed the note and mortgage for the secondary financing; that nobody forced him to sign the documents or threatened him but that he could not have purchased the condominium unit without the proceeds from the second mortgage loan; that no one imposed a time limitation with respect to his review of the second mortgage loan documents; and that the reason he stopped making payments on the second mortgage was because of financial difficulties.

whether a transaction is unconscionable is a question of law, not a question of fact, and that the trial court's determination on that issue is subject to a plenary review on appeal." (Internal quotation marks omitted.) *Crews* v. *Crews*, 295 Conn. 153, 163, 989 A.2d 1060 (2010). "It also means, however, that the factual findings of the trial court that underlie that determination are entitled to the same deference on appeal that other factual findings command. Thus, those findings must stand unless they are clearly erroneous." (Internal quotation marks omitted.) *New England Retail Properties, Inc.* v. *Maturo*, 102 Conn. App. 476, 488, 925 A.2d 1151, cert. denied, 284 Conn. 912, 931 A.2d 932 (2007).

"The classic definition of an unconscionable contract is one which no man in his senses, not under delusion, would make, on the one hand, and which no fair and honest man would accept, on the other. . . . The doctrine of unconscionability, as a defense to contract enforcement, generally requires a showing that the contract was both procedurally and substantively unconscionable when made—i.e., some showing of an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party . . . ." (Citation omitted; internal quotation marks omitted.) *Bender* v. *Bender*, 292 Conn. 696, 731–32, 975 A.2d 636 (2009).

In addition to the defendants' previous arguments discussed in part III A of this opinion, they focus on the terms of the subject note and mortgage, and claim that they were unaware of those terms at the time they signed the loan documents. In support of their argument that the loan was unconscionable, the defendants emphasize the note's interest rate of 12.5 percent per annum, the default rate of 14.5 percent per annum and the balloon payment at the end of five years that "would be approximately equal to the original amount of the loan." To the extent that the defendants are claiming

that the terms themselves were unconscionable, we conclude that the record fails to disclose any evidence to support their argument.[10]

The defendants presented no evidence to demonstrate that the interest rates were unfair or that a balloon payment at the end of five years was unreasonable for a second mortgage loan. Daddario, however, testified that he researched the interest rates charged by other second mortgage lenders and believed that the plaintiff's interest rate was fair because of the high risk inherent with second mortgage loans. Because the party claiming unconscionability bears the burden of proof, the defendants' mere claim that the terms of the subject note and mortgage were unconscionable is insufficient to establish their special defense. See *New England Retail Properties, Inc.* v. *Maturo*, supra, 102 Conn. App. 490. Accordingly, the court's determination that the defendants' special defense was without merit was legally correct.

## IV

The defendants' final claim is that the plaintiff had unclean hands and committed fraud in its dealings with them.[11] The defendants argue that they established that the plaintiff's conduct, in providing secondary financing

[10] With respect to this issue, the court simply concluded that "the terms of the mortgage were not unconscionable . . . ."

[11] In the defendants' statement of issues, they also claim that the interest rate of 12.5 percent per annum and the default rate of 14.5 percent per annum were usurious. They simply claim that the mortgage was not a bona fide mortgage exempted from the application of General Statutes § 37-4 and cite one case, a United States Supreme Court decision issued in 1796, in support of that argument. Their analysis, which is less than one page in their brief, is insufficient. "We are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than [mere] abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly." (Internal quotation marks omitted.) *Cooke* v. *Cooke*, 99 Conn. App. 347, 353, 913 A.2d 480 (2007). Accordingly, we decline to review that issue.

that was prohibited by the first mortgage lender, was improper and that the court improperly determined that the special defenses were without merit on the ground that any alleged deception was directed toward Citicorp as the first mortgage lender and not toward the defendants.

The defendants' claims of unclean hands and fraud are based on the premise that secondary financing was prohibited and that the plaintiff used a fictitious company to conceal the execution of the second mortgage loan. The court specifically found, however, that Citicorp did not prohibit secondary financing and that the discrepancy in the plaintiff's name was a typographical error. Accordingly, for the reasons previously discussed in this opinion, these claims must fail.[12]

The judgment is affirmed.

In this opinion the other judges concurred.

___

[12] For the same reason, the defendants' claim that the conduct of the plaintiff violated the provisions of the Connecticut Unfair Trade Practices Act fails.