******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ASPEN PROPERTIES GROUP, LLC, TRUSTEE *v.*
CATHLEEN ROBERTS-JOACHIM ET AL.
(AC 47311)

Cradle, Clark and Prescott, Js.*

*Syllabus*

The defendant property owner appealed from the trial court's judgment of foreclosure by sale. She claimed, inter alia, that the court improperly failed to find that one of the plaintiff's predecessors in interest had abandoned the mortgage that the plaintiff sought to foreclose. *Held*:

The trial court did not improperly find that the defendant failed to establish by a preponderance of the evidence that the plaintiff's predecessor had abandoned the mortgage, as the court's various subordinate findings of fact were not clearly erroneous, and it was free to decline to draw the inferences sought by the defendant.

Argued December 9, 2024—officially released April 22, 2025

*Procedural History*

Action to foreclose a mortgage on certain real property owned by the named defendant, and for other relief, brought to the Superior Court in the judicial district of Litchfield, where Wilmington Savings Fund Society, FSB, as Owner Trustee of the Aspen G Trust, a Delaware Statutory Trust, was substituted as the plaintiff; thereafter, the case was tried to the court, *Lynch, J.*; judgment of foreclosure by sale, from which the named defendant appealed to this court. *Affirmed*.

*Loraine Martinez Bellamy*, with whom was *Jeffrey Gentes*, for the appellant (named defendant).

*Jeffrey M. Knickerbocker*, for the appellee (substitute plaintiff).

---

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

*Opinion*

PRESCOTT, J. The defendant Cathleen Roberts-Joachim, now known as Cathleen Roberts,[1] appeals from the judgment of foreclosure by sale rendered following a court trial in favor of the substitute plaintiff, Wilmington Savings Fund Society, FSB, not in its individual capacity but solely as Owner Trustee of the Aspen G Trust, a Delaware Statutory Trust.[2] In this appeal, the defendant's principal claim is that the trial court improperly failed to find that one of the substitute plaintiff's predecessors, PNC Bank, N.A. (PNC), abandoned the mortgage that the substitute plaintiff sought to foreclose. We affirm the judgment of the trial court and remand the case for the purpose of setting a new sale date.

The following facts, based on a stipulation submitted by the parties and those found by the court, are relevant to the resolution of this appeal. In 2006, the defendant entered into an agreement with National City Bank for a home equity line of credit secured by a second mortgage on her property located at 155 Candlewood Mountain Road in New Milford (property). PNC acquired this loan and mortgage in 2008.

The defendant subsequently experienced an economic hardship and defaulted on her loan obligations

---

[1] The original complaint named Cathleen Roberts-Joachim and her then husband, Douglas Joachim, as defendants. At the time the underlying note and mortgage were executed, the defendant and Douglas Joachim were record owners of the property. The defendant was subsequently awarded the subject property in a dissolution proceeding. Douglas Joachim did not participate in the underlying action or in this appeal. Our references in this opinion to the defendant are to Cathleen Roberts only.

[2] Aspen Properties Group, LLC, as Trustee of AG3 Revocable Trust, commenced this action. Thereafter, the note and mortgage were assigned from the named plaintiff to Wilmington Savings Fund Society, FSB, Not in Its Individual Capacity but Solely as Owner Trustee of the Aspen G3 Trust, a Delaware Statutory Trust, which in turn assigned the mortgage to the substitute plaintiff.

secured by the two mortgages on her property. In May, 2013, Wells Fargo Bank, N.A. (Wells Fargo), the servicer for the first mortgage on the property, commenced a foreclosure action (2013 foreclosure action). PNC was named as a defendant in the 2013 foreclosure action, but it did not file an appearance or participate in those proceedings. The court in the 2013 foreclosure action found that the debt on the first mortgage exceeded $350,000 and that the fair market value of the property was $304,000. It therefore rendered a judgment of strict foreclosure in favor of Wells Fargo on May 5, 2014. PNC received notice of the judgment in the 2013 foreclosure action. Nearly one year later, the defendant secured a loan modification and Wells Fargo subsequently withdrew the 2013 foreclosure action.[3] Following that withdrawal, "the defendant has kept the first mortgage current and out of foreclosure."

Starting in April, 2012, the defendant fell behind in her payment obligations to PNC on the home equity line of credit. The present action was commenced on December 4, 2020. The court determined that the substitute plaintiff had "made out a prima facie case for its one count foreclosure complaint.[4] Specifically, the [substitute] plaintiff is the owner and holder of the original note . . . . The total debt through November 7, 2023, is $256,166.87. The [substitute] plaintiff also seeks an award of [attorney's] fees in the amount of . . . $28,495 if a foreclosure by sale is ordered. [The defendant]

---

[3] The record does not reveal any information that explains whether the law days had passed or why Wells Fargo was permitted to withdraw the 2013 foreclosure action almost one year after the court had rendered a judgment of strict foreclosure.

[4] See *Deutsche Bank National Trust Co.* v. *Bretoux*, 225 Conn. App. 455, 462–63, 317 A.3d 152 (2024) (to establish prima facie case in mortgage foreclosure action, plaintiff must prove by preponderance of evidence that it is owner of note and mortgage, that defendant has defaulted on note, and that any conditions precedent have been satisfied; additionally, party raising special defense has burden of proving facts alleged therein).

does not dispute the amount sought by the [substitute] plaintiff for its attorney's fees." (Footnote added; footnote omitted.)

The sole contested issue at trial was whether the defendant had proved her special defense that the substitute plaintiff's predecessors, namely PNC, abandoned the second mortgage securing the home equity line of credit, which would prevent the substitute plaintiff from prevailing in the foreclosure action.

After setting forth the relevant law regarding abandonment of a mortgage, the court found that the defendant had not met her burden of proving this special defense. Specifically, it determined that the failure of PNC to participate in the 2013 foreclosure action was not persuasive evidence of an intent to abandon the second mortgage given that there was no equity available for a junior lienholder at that time. Additionally, the court rejected the defendant's contention that PNC's sporadic mailing of demand letters to the defendant demonstrated that it had abandoned this mortgage. In doing so, the court first explained that PNC had "charged off" the home equity line of credit account and therefore was no longer required to continue sending monthly statements to the defendant. Additionally, the court noted that the predecessors of the substitute plaintiff, principally PNC, had sent ten letters to the defendant in the time period of June 9, 2012, to April 7, 2016. Given these circumstances, the court was not persuaded that PNC had abandoned the mortgage.

The court also rejected the defendant's argument that, because these demand letters pertained only to the loan, PNC "necessarily abandoned the mortgage." It declined to infer that the failure to reference the mortgage and the amount owed in these letters necessarily demonstrated an intent to abandon the mortgage.

Finally, the court disagreed with the defendant's contention that an intent to abandon the mortgage should be inferred from the fact that PNC had disengaged entirely from loan workout discussions, specifically finding that the defendant had impeded these discussions by failing to submit a formally prepared profit and loss statement requested by PNC.

Ultimately, the court concluded: "For all [these] reasons, the court does not find that the special defense of abandonment precludes the [substitute] plaintiff from successfully foreclosing on the defendant's property. To the contrary, the court finds that the [substitute] plaintiff is entitled to a judgment of foreclosure and finds that the debt as of November 7, 2023, is $256,166.87. The court awards attorney's fees in the amount of $28,495, an appraisal fee of $325 and a title search fee of $225. The court finds the fair market value of the property to be $628,000 . . . . Given the equity in the property, the court orders a foreclosure by sale." This appeal followed.

It is axiomatic that an action to foreclose a mortgage is an equitable proceeding. See *M&T Bank* v. *Lewis*, 349 Conn. 9, 32, 312 A.3d 1040 (2024). Our courts have permitted several equitable defenses to a foreclosure action, including abandonment of a mortgage. See, e.g., *TD Bank*, *N.A.* v. *M.J. Holdings*, *LLC*, 143 Conn. App. 322, 326–28, 71 A.3d 541 (2013). In regard to this special defense, this court has explained: "It is the law of this state that a mortgagee may abandon his right of security under the mortgage. . . . *Abandonment is a question of fact. To constitute it there must be an intention to abandon or relinquish accompanied by some act or omission to act by which such an intention is manifested.* . . . While mere [inaction] and lapse of time alone are not enough to constitute abandonment, they are competent evidence of an intent to abandon, and as such may be entitled to great weight when considered

with other circumstances, and abandonment may be inferred from circumstances, such as failure by acts or otherwise to assert any claim to the right alleged to have been abandoned, or may be presumed from long continued neglect. . . . Most frequently, where abandonment has been held established, there has been found present some affirmative act indicative of an intent to abandon . . . . The weight and effect of such conduct depends not only upon its duration but also upon its character and the accompanying circumstances." (Citation omitted; emphasis added; footnote omitted; internal quotation marks omitted.) *R. F. Daddario & Sons, Inc.* v. *Shelansky*, 123 Conn. App. 725, 735, 3 A.3d 957 (2010); see also *Brierley* v. *Johnson*, 131 Conn. 675, 678, 42 A.2d 34 (1945); *Glotzer* v. *Keyes*, 125 Conn. 227, 232–33, 5 A.2d 1 (1939).

We emphasize that the special defense of abandonment of a mortgage generally presents a question of fact. See *Brierley* v. *Johnson*, supra, 131 Conn. 678; *R. F. Daddario & Sons, Inc.* v. *Shelansky*, supra, 123 Conn. App. 735. "Appellate review of findings of fact is limited to deciding whether such findings were clearly erroneous. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . We do not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached." (Internal quotation marks omitted.) *Citicorp Mortgage, Inc.* v. *Weinstein*, 52 Conn. App. 348, 358–59, 727 A.2d 720 (1999).

Additionally, this court has stated: "[*B*]*ecause a mortgage foreclosure action is an equitable proceeding, the trial court may consider all relevant circumstances to ensure that complete justice is done. . . . [E]quitable*

remedies are not bound by formula but are molded to the needs of justice." (Emphasis added; internal quotation marks omitted.) *Milford* v. *Recycling, Inc.*, 213 Conn. App. 306, 310, 278 A.3d 1119, cert. denied, 345 Conn. 906, 282 A.3d 981 (2022); see also *Independence One Mortgage Corp.* v. *Katsaros*, 43 Conn. App. 71, 75–76, 681 A.2d 1005 (1996).

Following our careful review of the record, the appellate briefs, and oral argument, we conclude that the court properly considered all of the relevant circumstances in determining that the defendant had failed to establish that PNC, the substitute plaintiff's predecessor, abandoned the mortgage securing the home equity line of credit. First, the court found that PNC did not participate in the 2013 foreclosure action because, at that time, there was no equity remaining in the property to justify the expense, and this decision did not constitute persuasive evidence of an intent to abandon its mortgage. In support of this finding, the court cited to *R. F. Daddario & Sons, Inc.* v. *Shelansky*, supra, 123 Conn. App. 725. In that case, we upheld the trial court's conclusion that a lender's decision to decline to foreclose a mortgage during a five year period did not constitute abandonment because the lender knew there was no equity to justify the expense of such an action. Id., 736–37.

The defendant argues that *R. F. Daddario & Sons, Inc.*, is distinguishable from the present case and that the trial court should not have relied on it. Specifically, she contends that, unlike the present case, there was clear and direct testimony in *R. F. Daddario & Sons, Inc.*, that the mortgagee did not intend to abandon the mortgage. Because there was no such explicit testimony regarding PNC's intention in the present case, the defendant argues that the court's reliance on *R. F. Daddario & Sons, Inc.*, was "too far of a leap given the different kind of evidence presented here." We disagree.

It is true that the substitute plaintiff did not call a representative from PNC to testify that it did not intend, by declining to participate in the 2013 foreclosure action, to give up its rights to enforce the mortgage in the future if it was able to do so. It was not, however, the substitute plaintiff's obligation to present such testimony because the defendant bore the burden of persuasion on the special defense of abandonment. See, e.g., *Deutsche Bank National Trust Co.* v. *Bretoux*, 225 Conn. App. 455, 463, 317 A.3d 152 (2024). The trial court simply noted that "all parties agree that there was no equity in the property for PNC at the time of the prosecution of the [2013 foreclosure action]." This finding is properly based on the parties' stipulation that PNC had been sent various documents and pleadings from that case that evidenced a lack of any equity in the property at that time.

The lack of equity in the property supported a reasonable inference by the court that the decision of PNC not to participate in the 2013 foreclosure proceeding, similar to the lender in *R. F. Daddario & Sons, Inc.* v. *Shelansky*, supra, 123 Conn. App. 725, evinced a business judgment that participation in that case would not be financially prudent. The trial court, however, was not *required*, as the defendant seems to suggest, to then draw a further inference that this lack of participation also reflected an additional intent to abandon the mortgage for all time. As an appellate court, we may not substitute our judgment in this regard for the decision of the trial court to draw or not draw inferences from the evidence. See *Leconte* v. *Commissioner of Correction*, 207 Conn. App. 306, 322, 262 A.3d 140, cert. denied, 340 Conn. 902, 263 A.3d 387 (2021); see generally *Welsch* v. *Groat*, 95 Conn. App. 658, 667, 897 A.2d 710 (2006). Thus, we read the court's reliance on the decision in *R. F. Daddario & Sons, Inc.*, simply as a recognition of how a lender's lack of participation in an earlier

foreclosure action does not necessarily warrant a conclusion that the lender intended to abandon a mortgage.

Importantly, the court also reasonably declined to infer an intent to abandon from other facts disclosed by the record. First, the court reasoned that the sporadic mailing of demand letters from PNC to the defendant between 2012 and 2016 did not necessarily constitute an intent to abandon the mortgage because PNC had decided to "charge off" the home equity line of credit on its books as an accounting measure. As a result of this decision, it was less important to send demand letters regularly because PNC believed that the plaintiff would be unable to pay the amounts for which she was in default. Of course, PNC's determination that the loan should be classified as a bad debt does not necessarily mean that it also abandoned the mortgage, which realistically was perhaps the only remaining means to recover the sums it had loaned to the defendant. In other words, the court concluded that there was a reasonable explanation for the dearth of demand letters other than an intent to abandon the mortgage altogether.

Similarly, the trial court also was free to reject the defendant's invitation to draw an inference that PNC intended to abandon the mortgage simply because the demand letters it sent to the defendant referred explicitly only to the loan, and not to the underlying mortgage itself. The court certainly was justified in declining to draw the requested inference when some of the demand letters included a broad reservation of rights clause that evinced an intent to maintain all of its legal rights to obtain recovery.

Finally, the court was free to reject the defendant's argument that PNC abandoned the mortgage by disengaging from loan workout discussions in May, 2014. In rejecting the defendant's contention, the court properly relied on evidence that PNC requested information from

the defendant in connection with the loan workout discussions and that the defendant failed to submit a formally prepared profit and loss statement that a PNC employee had requested.[5] Accordingly, because the court's various subordinate findings of fact were not clearly erroneous and it was free to decline to draw the inferences sought by the defendant, we cannot disturb its conclusion that the defendant failed to establish by a preponderance of the evidence that PNC had abandoned the mortgage.

The judgment is affirmed and the case is remanded for the purpose of setting a new sale date.

In this opinion the other judges concurred.

---

[5] The defendant further contends that the court improperly found that she had failed to submit her 2013 federal tax return as requested by PNC during the loan workout discussions because there was no evidence of this fact. After carefully reviewing the memorandum of decision, we disagree that the court made such a finding and thus the necessary predicate for this claim has not been established.